CHARLES S. HOLLANDER et al. *vs.* THE CENTRAL
METAL AND SUPPLY COMPANY.

*Enforcement Against Non-Resident of Covenant of Redemption
in Lease—Notice by Publication—Who Is a Non-Resident—
Hearing of Case on Petition and Answer Without Evidence—
Deed to Be Made at Cost and Charge of Grantee—Counsel
Fees — Covenant of Redemption in Lease Runs with the
Land—Covenant Not in Violation of Rule Against Perpetui-
ties—Averments in Bill by Assignee of Leasehold to Redeem
Rent.*

The State has control over real property within its limits, and
may provide by statute that the contractual obligations of a
non-resident owner relating to such property may be enforced
against him, after reasonable notice by publication, without
personal service.

Specific performance of a covenant relating to the redemption
of a ground rent may be decreed against a non-resident owner
of the rent after notice by publication, and a trustee may be
appointed to execute the conveyance of the rent, under Code,
Art. 16, Sec. 117, which provides that when a defendant in a
suit in chancery to enforce a contract, etc., relating to prop-
erty, is a non-resident, notice of such suit may be given by
publication in the manner therein prescribed, and a trustee
appointed to execute any deed that may be required.

When the order of publication warning a non-resident owner of
a suit instituted by the tenant to redeem a ground rent, in
pursuance of a covenant in the lease, describes the property
as being situated on a certain street, and the ground rent as
one of a certain amount, created by lease of a certain date,
executed by designated parties, and recorded in designated
land records, there is a sufficient notice to the defendant of
the subject-matter of the suit under Code, Art. 16, Sec. 177,
which directs that published notice shall be given of the sub-
stance and object of the proceedings.

When a case is heard upon petition (or bill) and answer alone, without evidence, the averments in the answer are taken to be true, but only the petitioner (or the plaintiff) has the right to set the cause for hearing on petition and answer alone.

A former resident of this State who has been in Europe for a year and a half, and who is now in New York for certain purposes, may be proceeded against as a non-resident under Code, Art. 16, Sec. 117, although he has not acquired a fixed residence elsewhere, and intends to return to this State at some indefinite time in the future.

The assignee of an assignee of a leasehold interest is entitled to the benefit of covenants in the lease that run with the land, such as a covenant of redemption.

It is not necessary in a bill by the assignee to enforce such covenant of redemption that the *mesne* assignments from the original lessee to the plaintiff should be set forth.

When a lease provides that the lessor shall convey the fee simple to the lessee or his assigns at their request and cost and charge, the lessor cannot claim a counsel fee for the examination of the title of an assignee of the leasehold in order to ascertain if he is entitled to the benefit of the covenant.

A covenant in a lease by the lessor to convey the reversion upon the payment of a certain sum to the lessee, his heirs or assigns, is a covenant running with the land, and may be enforced by the assignee of the leasehold estate against an assignee of the reversion.

A covenant in a lease for ninety-nine years, renewable forever, that at any time during the continuance of the demise, the lessor, his heirs and assigns, will convey the fee simple title in the land to the lessee or his assigns, upon payment of a designated sum, is not in conflict with the Rule against Perpetuities.

A lease of land, executed in 1835, contained a covenant on the part of the lessor, his heirs and assigns, that at any time during the continuance of the demise, at the request and cost and charge of the lessee, his heirs or assigns, the lessor, etc., would convey the property in fee simple upon payment of a designated sum. Plaintiff's bill to enforce specific performance of this covenant alleged that he became owner of the

leasehold interest by virtue of a certain deed, filed with the bill; that the defendant owned the reversion in the land and was notified by plaintiff of his desire to redeem the rent and that plaintiff had tendered the required sum of money and a deed to be executed conveying the fee. Upon demurrer, *held,* that it was not necessary to set out in the bill all of the assignments of the leasehold interest from the original lessee down to plaintiff, in order to show his right to enforce the covenant; and that the covenant giving the right to redeem to the lessee, his heirs and assigns, enures to the benefit of the plaintiff as the assignee of an assignee.

*Decided December 2nd, 1908.*

*Supplemental Opinion filed February, 11th, 1909.*

Appeal from the Circuit Court of Baltimore City (EL-LIOTT, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS and WORTHINGTON, JJ.

*Arthur W. Machen* and *Arthur W. Machen, Jr.,* for the appellant.

I. The bill wholly fails to aver how Rosa Krulewitch's title to the lot, if any such she had, originated, and whether she claimed under or adversely to Robert Bolton and James Glanville, the original lessees. The bill does not state whether Robert Bolton and James Glanville are dead, or whether they or either of them ever parted with the title to the term for years.

Hence, the bill cannot be sustained, unless it be law that under a lease containing a covenant such as that set out above the lessor and those claiming under him are bound to convey the reversion, not merely to the lessees and their successors

in title, but to any person who comes forward and demands a deed offering to .pay the sum of money mentioned in the covenant.

We submit that to state that proposition is to answer it.

The lessor is bound, if at all, only to the lessees and those in privity with them. As the bill fails to aver any privity between the plaintiff and the original lessees, we submit that the demurrer should for this reason be sustained.

Indeed, even if the bill had alleged generally the plaintiff to have succeeded by *mesne* assignments to the title of Bolton and Glanville, that averment would be insufficient. It would be necessary for it to go further, and by setting out the several assignments, show *how* the title had devolved from the original lessees to the plaintiff, so that the Court may judge of the sufficiency of his title.

"In an action brought by the assignee of a term all the assignments of the term down to himself should be specifically stated, for he, being privy to them, shall not be allowed to plead generally that the estate of the lessee of and in the demised premises came to him by assignment." I *Chitty on Pleading,* 16th Am. Ed., *382. Accord: *Gould on Pleading,* sec. 32; *Alexander's British Statutes,* p. 348.

The same doctrine applies in equity. 1 *Daniel's Chancery Practice,* 1st Am. Ed., 369-371; *Miller's Equity Procedure,* page 117, note 10; *Davis* v. *James,* 26 Ch. D. 778.

The last case shows that the rule, being of great substantial assistance to the Court and tending to promote the ends of justice, is not affected by modern codes (of which we fortunately have none in Maryland) relaxing many of the rules of equity pleading. Definiteness and certainty is especially requisite in a bill for specific performance, which, in any case of ambiguity, is to be taken most strongly against the plaintiff. 20 *Enc. of Pl. and Pr.,* pages 435-436.

II. A bill for specific performance "should contain an *offer* to *do* equity, and should show that the plaintiff is able and

willing to perform his portion of the contract." 20 *Enc. of Pl. and Pr.,* page 458; *Carswell* v. *Walsh,* 70 Md. 507.

The bill contains no offer to bear the "cost and charge" of the conveyance, the express requirement and condition of the covenant. These words "cost and charge" in this connection have received judicial interpretation, and it has ben held that they require the person claiming the right to the conveyance to pay the reasonable counsel fees of the landlord incurred in examining the title of the applicant who claims the benefit of the covenant, in order to make sure that the applicant is indeed the person legally entitled to the benefit of any covenants that run with the lease. *Re Baylis* (1907) 2 Ch. 54; *Fitzsimmons* v. *Mostyn* (1904), A. C. 46, affirming (1903) 1 K. B. 349.

The words at the "request, cost and charge" of the tenant mean: " 'That the landlord is to be at no cost.' That is reasonable enough at any rate; but whether it is reasonable or not, that is the bargain. * * * A solicitor conducting negotiations for a renewal on behalf of his client under a covenant of this kind necessarily incurs whatever costs he reasonably incurs in order to satisfy his client that he is granting the renewed lease to the proper person. He would be guilty of negligence if he did not take every proper precaution to see that the person demanding the renewed lease is entitled to it, and, therefore, what he does reasonably he does necessarily. Whatever is, therefore, reasonable in that sense seems to me to come within the costs and charges of the lessee. It need not always happen that any costs should be incurred, yet, with some trifling exceptions, costs are incurred in almost every case unless when the grant is direct to the original lessee, in which case he may be treated as the owner of the lease. But property very seldom remains in the same hands, unaffected by settlements, or mortgages, or devolutions of title, for a period of fourteen years, and something requiring investigation is almost sure to occur in every case." (1907) 2 Ch. 58-59.

Redemptions under the *statute* are to be distinguished; for the statute, (Code, 1904, Art. 21, sec. 88) does not require that the redemption shall be at the "cost and charge" of the tenant. Therefore, no law or practice under the statute can have any bearing here.

As was pointed out by counsel in *Mostyn* v. *Fitzsimmons* (1903), 1 K. B. 349, 351, a construction of the words "costs and charges" which would confine their operation to the expenses of preparing the deed would deprive them of all effect whatsoever; for without those words the tenant, being a purchaser, would be required, in England as in Maryland, to pay those expenses without any express provision.

III. We further contend that under the peculiar terms of this covenant, even if the plaintiff had alleged and were able to prove a regular succession of assignments from Bolton and Glanvile down to Rosa Krulewitch, from whose administrator it acquired whatever interest it may have in the land, still the plaintiff would not be the proper person under the terms of the covenant to enforce performance thereof.

The covenant contemplates a conveyance of the reversion in fee—inheritable property which passes to the heir rather than to the administrator. The covenant provides that the conveyance is to be made "at the request and cost and charge of the said Robert Bolton and James Glanville, their *heirs* or assigns." Moreover, the conveyance is to be made to "said Robert Bolton and James Glanville, their *heirs* and assigns."

This word "heirs" cannot be ascribed to inadvertence. On the contrary, throughout the lease a careful and technically accurate discrimination is made between "heirs" and "executors and administrators." The lease is expressed to be given to the lessees, "their *executors, administrators* and assigns." The habendum is likewise to them, their *executors, administrators* and assigns." The rent is to be paid by the lessees, their *executors, administrators* and assigns," but is reserved to the lessor, "her *heirs* and assigns."

The same distinction between "executors and administrators" and "heirs" appears from a comparison of the covenant

for renewal, with the covenant more particularly involved in this case. The renewal is to be "on the request and at the cost and charge of the said Robert Bolton and James Glanville, their *executors, administrators* and assigns;" and the new lease is to be made to "the said Robert Bolton and James Granville, their *executors, administrators* and assigns."

In other words, the lease clearly contemplates that while the benefit of the covenant for renewal shall devolve upon the executor or administrator, the benefit of the covenant for a conveyance in fee shall be inherited by the heir. As such a contract contravenes no rule of law, effect must be given to it, so that an administrator can have no interest in the covenant. A covenant to execute further assurances at the request of the *heir* of the grantee is not broken by a failure to execute a further assurance at the request of the *executor.* *Kingdon* v. *Nottle,* 1 M. & S. 355.

But, as we have just shown, even if Rosa Krulewitch had succeeded to the title of Bolton and Glanville, it would be her *heir* and not her *administrator,* who alone according to the terms of the covenant would be entitled to its benefit.

IV. The alleged covenant does not "concern the thing or estate demised," or in other words does not pertain to the relation of landlord and tenant, and consequently does not run with the land, so as to be enforceable against an assignee of the reversion and in favor of an assignee of the term for years even if the plaintiff were alleged and proved to be such an assignee, and even if the language of the covenant had been such as to indicate that the benefit of it should pass to the administrator rather than the heir of a tenant. This has lately been held after full consideration by the English Court of Appeal. *Woodall* v. *Clifton* (1905), 2 Ch. 257.

The reasoning is that a covenant for conveyance of the fee does not concern the relation of landlord and tenant—does not, for example, like a covenant for renewal, provide for a continuation of that relation—but rather provides for a final termination of the relationship and all its incidents.

V. We contend that the alleged covenant cannot be enforced specifically against an assignee of the reversion because of the Rule against Perpetuties. In a late Maryland case on the subject of perpetuities, this Court, speaking through Chief Judge McSherry, quotes with approval the definition of a perpetuity given by *Lewin Lee Graham* v. *Whitridge,* 99 Md. 274.

It is well settled that a covenant to convey real estate to another person at the latter's option at any time in the remote future, more than a life or lives in being and twenty-one years thereafter, while it is a good personal contract enforceable at law by action for damages against the covenantor, his executor or administrator, yet cannot be specifically enforced in equity against an alience of the land so as to create virtually an equitable interest in land to spring up at a remote period. *London & S. W. Ry. Co.* v. *Gomm,* 20 Ch. D. 562; *Trevelyan* v. *Trevelyan,* 53 L. T. n. s. 853; *Winsor* v. *Mills,* 157 Mass. 362; *Tyrrell's Estate* [1907], 1 Ireland, 292; *Gray on Perpetuities,* 2d Ed., secs. 230 B, 275, 275A; *Woodall* v. *Clifton* [1905], 2 Ch. 257; *Worthing Corp.* v. *Heather* [1906], 2 Ch. 532; *Starcher Bros.* v. *Duty* (W. Va.), 56 S. E. 524; *Starcher Bros.* v. *Duty* (W. Va.), 56 S. E. 527.

All of these authorities distinctly declare that a covenant giving an option to purchase land cannot be specifically enforced, at any rate against a purchaser of the land, unless the option must by its terms be exercised if at all within the limits prescribed by the Rule against Perpetuities.

The same law applies where the covenant giving the option is in favor of a tenant and is contained in a lease for more than 21 years, or is, in other words, to use the popular and statutory phrase, "a covenant for redemption," exercisable at a remote period. This is laid down as settled law in standard text-books and is supported by *every decided case in which the point has arisen.* *Woodall* v. *Clifton* [1905], 2 Ch. 257; *Worthing Corporation* v. *Heather* (1906), 2 Ch.

532 (holding that the covenant cannot be specifically enforced, but will support an action at law for damages against the original covenantor) ; *Tyrrell's Estate* [1907], 1 Ireland, 392; *Gray on Perpetuities,* 2d Ed., sec. 230A.

The result necessarily follows from Mr. Lewin's definition of a perpetuity, which was approved by this Court in *Graham* v. *Whitridge.* The fee certainly does not vest in the tenant until his option to purchase is exercised, and (if the covenant is valid), the limitation of the fee over to the tenant is not destructible by the lessor without the tenant's consent. Hence, as the option may be exercised according to its terms at any time within 99 years, the conclusion is inevitable that the option is so far void that it cannot be enforced specifically as an equitable limitation of the fee binding on grantees of the reversion.

There is more reason for applying this doctrine in Maryland than elsewhere; for the very basis of our original ground-rent system was to split up the ownership of the land into two separate interests, the fee and the leasehold, each of which vested on the execution of the lease and should *last forever.* In accordance with this scheme, this Court held that the covenant for *renewal* could be enforced even after the lapse of the original term, so as to preserve the two interests, leasehold and fee, forever. *Banks* v. *Haskie,* 45 Md. 207.

Now, if such a covenant as that involved in this case were enforced specifically, it would put an end to the fee-simple interest and thus terminate one of the two interests into which the ownership of the land is split up, and which it was the very object of our ground-rent system to keep alive perpetually.

Covenants for redemption were not part of the original ground-rent system of Baltimore, but are an innovation, introduced after the system had become established. *Harris's Entries,* published in 1801, and containing a full collection of precedents of conveyancing as then practiced in Maryland, has no form for a covenant of redemption.

The Legislature thought fit, in 1884, to break up for the future the ground-rent system; but that legislation cannot, and does not purport to, affect leases executed prior to that time. The fact remains that the Common Law and policy of this State encouraged irredeemable rents. The prevalence of the system of ground rents in this State, therefore, so far from being a reason for departing from the authorities above cited as to the non-enforceability in equity of covenants in leases for a conveyance of the fee, is rather an argument for adhering to the law as laid down in England, in Ireland, and in other States of the Union.

In Ireland, from which our ground-rent system was taken, a provision for redemption of a rent at any time at the option of the person who owns the land subject to the rent has been held to be unenforceable specifically because of the Rule against Perpetuities. *Tyrrell's Estate* [1907], 1 Ireland, 392. In view of the authority attached by this Court in *Banks* v. *Haskie* to Irish cases on the subject of ground rents, this decision is, we submit, of great weight.

But, if it be said that covenants for redemption were common in leases prior to the Act of 1884 and have been assumed by the legal profession to be valid, we are not prepared to admit the truth of such assertions, nor to concede that, if admitted, they should control the decision of this case in opposition to the uniform tenor of the authorities, and to the clear and convincing reasoning by which those authorities are supported.

That covenants for redemption were sometimes inserted in 99-year leases prior to 1884 is true; but that such covenants were *usual* is denied. When any such covenants were inserted, it was usually stipulated that the option to redeem should be exercised, if at all, within some limited time less than twenty-one years—as five years, or ten years, in which case the Rule against Perpetuities would have no application. That covenants for conveyance of the fee at any time during 99-year leases cannot have been very common, is shown by

the fact that no case has come before this Court in which any such covenant was in any way involved, although numerous cases relating to covenants for renewal and to redemptions under the statute have come up. Instruments in form of lease containing covenants for redemptions intended as substitutes for mortgage security, and in equity having the effect of mortgages, under a practice once prevalent in Maryland and recognized in *Posner* v. *Bayless,* 59 Md. 56, 60, and other cases, form a class to themselves. In such cases, the instruments are not enforced according to their terms, but equity, looking at the substance rather than the form, regards the transaction as a mortgage, as would be done in the case of an absolute deed intended as security for a debt and not succeeded by a lease.

Moreover, even if such covenants had been common and had been assumed (by lawyers who were not familiar with the Rule against Perpetuities) to be enforceable against assignees of the reversion, a decision in our favor will shake no titles. As to leases executed since 1884, the question cannot arise. As to older leases, if the covenants have been performed, the reversioner's deed would convey a good title irrespective of the question whether he might have successfully resisted specific performance. If the covenant has not been performed, it must be either because the reversioner, or the leasehold owner, knew that the covenant was unenforceabl, or else because the tenant did not think it worth while to pay the sum fixed for redemption. It is unlikely that in any case where the burden of the rent is to any considerable extent greater than the sum fixed for redemption, so long a period as that from 1884 to 1908 would have been allowed to elapse by the tenants without claiming performance of the covenant unless they were advised that the validity of the covenant was at least questionable.

*Maughlin* v. *Perry,* 35 Md., decided, and could decide, no question pertaining to the Rule against Perpetuities, as the lease in that case was for less than 21 years, so that the

estate created by exercise of the option of purchase necessa-
.rily vested, if at all, within the limits of the Rule.

It will be argued by the other .side that the object of the
Rule against Perpetuities is to prevent the "tying up" of
property beyond the limits of the Rule, and that such a cove-
nant as that involved in this case does not "tie up" the prop-
erty, but rather tends to free it from the incumbrance of the
rent. But the *way* in which the rule attempts to prevent the
"tying up" of property is by requiring all future interests to
"*vest*" if at all within the limits prescribed by the rule. As
the fee under such a covenant does not necessarily vest in the
tenant within those limits, the covenant, regarded as a limita-
tion of the land, is void.

But in point of fact, the question whether the covenant
"ties up" the property depends on whether it is looked at
from the standpoint of the landlord as well as the tenant. It
is true that the *tenant* is entirely free. He is *dominus* of the
situation. But the hands of the landlord, who has a vested
legal estate, are effectually tied. *He* cannot tell whether the
tenant's option will be exercised or not, and consequently his
estate is subject to the very uncertainties of value and con-
tinuance that the Rule against Perpetuities aims to prevent.

The fact (if it be a fact) that this covenant runs with the
land does not make it any the less obnoxious to the Rule
against Perpetuities.

Before the decision in *Woodall* v. *Clifton* [1905], 2 Ch.
257, settling the law for England in regard to the effect of
covenants by lessors giving the lessees or their assigns the
right or privilege of purchasing the reversion at .any time
had been pronounced, a full discussion of the subject ap-
peared in an interesting and masterly article in the *Solicitor's
Journal* (42 Sol. Journ. 628), which completely anticipates
and answers some objections which are likely to be urged
against the reception of the doctrine of that case in jurisdic-
tions where the judgments of the English and the Irish
Courts are not of conclusive authority.

*In reference to the appeal from the order of the Circuit Court overruling petitions of Charles S. Hollander and Else Hollander and Lee M. Hollander praying rescission of the order of publication and quashing of proceedings.*

1. It is established by decisions of the Supreme Court of the United States that no suit *in personam* can constitutionally be prosecuted in any State Court without personal service of process. *Pennoyer* v. *Neff,* 95 U. S. 714; *Hart* v. *Sansom,* 110 U. S. 151; *Scott* v. *McNeal,* 154 U. S. 154. It is settled law that a suit in equity for specific performance is a proceeding *in personam. Dorsey* v. *Omo,* 93 Md. 74; *Penn* v. *Lord Baltimore,* 1 Ves. 444; *Fry on Specific Performance,* sections 123, 124.

It necessarily follows that a suit for specific performance cannot be maintained against a non-resident on service by publication merely, although the land may lie within the State, at least unless the State by express legislation has given jurisdiction to the Court to proceed *in rem* with respect to the land in the exercise of a statutory jurisdiction differing from the exercise of the ordinary jurisdiction in suits for specific performance. *Spurr* v. *Scoville,* 3 Cush. Mass. 578.

It has been held by this Court, in a case decided when the condition of the statute law of this State with regard to suits for specific performance against non-residents was the same as it is now, that a suit for specific performance of a covenant by the lessor in a lease for 99 years for a renewal of the term could not be maintained against non-resident successors to the title of the lessor upon publication made pursuant to the existing statute. *Worthington* v. *Lee,* 61 Md. 530.

2. Assuming that there is statutory ground for a proceeding by publication in such a case as this, have the statutory provisions as to notice by publication been complied with?

The statute provides that the Order of Publication shall state "the substance and object of the bill." The rule is well established that "to secure the benefit of the provisions of the

Code authorizing constructive notice in cases like this there must be a *strict compliace* with this requirement." *Hardester* v. *Sharretts,* 84 Md. 150; *Dorsey* v. *Dorsey,* 30 Md. 534.

The only description of the land in this Order of Publication is the following:

"A lot of ground on the east side of a ten-foot alley in the rear of Lombard and Frederick streets in the City of Baltimore, the description of which lot of ground is fully set out in the bill."

How is the non-resident warned by such a notice that *his* property is in danger? How can he tell from such a description whether *his* lot or some other property on an alley "in the rear of Frederick and Lombard streets" is affected? As the very requirement of the statute is that the substance of the bill must be stated in the order, the reference to the bill as containing a more particular description cannot help. So, too, references to the Land Records of Baltimore City can be of no assistance to a non-resident; for he being *ex hypothesi* absent from the State can have no access to those Land Records.

The obvious purpose of the statute is that the published order shall *on its face* give due notice to the non-resident. If the statute were construed as authorizing any such meagre order of publication as that in this case, it would not afford the due process of law guaranteed by the Fourteenth Amendment to the Constitution of the United States. For even in cases where publication is permissible, there must be a publication of such a character as to give the defendant reasonable warning of the material facts—especially the fundamental fact of what property it is which is to be affected by the suit.

3. This petition of Lee M. Hollander was set for hearing *by the plaintiff* (the appellee). Subsequently, on September 18th, the appellee filed an answer denying that Lee M. Hollander was a resident of Maryland. This answer was filed only the day before the hearing, which took place on Septem-

ber 19th. Consequently, Lee M. Hollander had no opportunity to take testimony in support of any allegations of his petition which were denied or controverted by the answer.

JUDGE ELLIOTT says that the averments of the answer are to be taken as true, even where they controvert the allegations of the Petition, because the case stood for hearing on petition and answer. But for the very reason that setting a case for argument on bill, or petition, and answer admits the averments of the answer, it is settled law that a case can be set for hearing on bill, or petition, and answer, *only by the plaintiff or petitioner,* as the case may be. *Somerville v. Marbury,* 7 G. & J. 281; *Paul v. Nixon,* 1 Bland, 200, note; *Warren v. Twilley,* 10 Md. 39, 47; *Miller's Eq. Proc.,* page 319.

If the appellee could set Lee M. Hollander's petition down for argument on petition and answer he would preclude the appellant from proving the facts alleged in the Petition and denied in the Answer. Hence we submit that whatever the ruling of this Court may be upon the other points in the case, the order dismissing Lee M. Hollander's petition should be reversed, and that if the case should be remanded for further proceedings, Lee M. Hollander should be allowed to take testimony in support of the allegations of his Petition so far as they may be taken to be denied or avoided by the averments of the appellee's answer.

The proceeding *in personam* upon the assumption that the covenant in question is capable of enforcement between the parties to the present suit by a bill in equity for specific performance, the further question exists whether such a suit, if prosecuted as a proceeding *in rem,* and without personal service of process, can be sustained under that clause of the Constitution of the United States, which forbids the passage by any State of any law impairing the obligation of contracts.

The contract of the covenant in question, made under the laws of Maryland existing at the date of the lease, subjected the lessor, or the lessor, her heirs and assigns, to certain personal obligations; it was out of the power of the Legislature afterwards to modify this contract by putting into it another

term, by coverting the original right *in personam* into a right *in rem.*

The contract of the covenant in question as made in 1835, under the law of Maryland *then existing* subjected the lessor, or heirs or assigns, to certain *personal* obligations only. No. statute then authorized, or provided for, an equitable lien, or right *in rem,* of the kind asserted by the appellee to be created by the statutes now on the statute book. Any State legislation so altering the contract of this covenant as to make it import the establishment of a lien upon the estate of the lessor in the ground leased, impairs the original obligation of the contract, and therefore is beyond the constitutional power of the State.

Hence, if the Code provisions relied upon by the appellee have the construction and effect which the appellee claims that they have, such legislation is void under the prohibitory clause of the Constitution of the United States.

The bill does not seek a proceeding under the Act 1906, Chapter 337, and the consideration of that extraordinary act is not involved in this case. The Act is clearly unconstitutional as applied to any lease executed before its passage. Besides other obvious grounds of objection under the constitution of the United States and the Fourteenth Amendment thereto, and also under the Constitution of Maryland, it is observable that it undertakes under some circumstances to make landlords bear certain of the expenses of redemption, and therefore cannot be applied to leases executed prior to the statute and containing a stipulation that the "costs and charges" of redemption shall be borne by the tenant. If so applied, it would impair the obligation of contracts in violation of Article 1, Section 10, of the Constitution of the United States.

*R. E. L. Marshall* and *John G. Schilpp,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

The Central Metal and Supply Company of Baltimore City, "a corporation duly incorporated under the laws of the State of Maryland," having purchased the leasehold estate in a certain lot of land in Baltimore City, brought this suit on the 31st day of May, 1907, against the appellants, as the present owners of the reversion in said lot, for a specific performance of the covenant in the lease of the lessor, "her heirs and assigns," upon payment of the amounts specified therein, to convey the fee to the lessees, their "heirs and assigns." The bill alleges that the defendants, Charles Hollander and Elsie Hollander, his wife, and Lee M. Hollander are non-residents, and that the plaintiff, in January, 1907, addressed a letter to these defendants notifying them of its desire to redeem the ground rent under the lease, and prepared and forwarded to them for execution, a deed from them to the plaintiff of the fee in said lot, which they refused to execute on the ground that "the said rent is not redeemable." After an order of publication had been passed against the non-resident defendants, Charles S. Hollander and wife filed a motion to rescind the order, and to quash the proceedings, on the ground (1) that a suit for the specific performance of a contract is a suit *in personam,* and can not be maintained against a non-resident on service by publication, and (2) that the order of publication in this case does not contain a sufficient description of the property to inform the defendants of the property involved in the suit. Sometime after this motion was filed, Lee M. Hollander filed a similar motion, alleging as an additional reason for rescinding the order as against him, that at the time of the bringing of the suit he was a resident of the State of Maryland.

The case of *Worthington* v. *Lee,* 61 Md. 530, was for specific performance of a covenant for a renewal of a lease for ninety-nine years, renewable forever, and for an injunction to restrain an action of ejectment for the recovery of the premises. Some of the non-resident defendants appeared and pleaded to the jurisdiction of the Court to grant relief, while

against others interlocutory decrees were entered in default of. appearance and answer. The notice to non-residents was by publication, and the Court in dealing with the case as against the non-resident defendants, said, "If the application was for a sale of the property, or for a simple conveyance thereof, those objects·could be accomplished by the appointment of a trustee, as provided by the Code, Art. 16, Secs. 67, 135. ·But those provisions of the statute do not apply in a case like the present, where the object of the decree is to secure to the plaintiff the specific execution of the covenant, whereby she is entitled to obtain a renewed lease, with important and valuable personal covenants of the lessors, and without which it would not be an instrument of the character contemplated by the covenant decreed to be performed. The Court could direct a lease for ninety-nine years to be made by a trustee, but not with covenant for renewal, and other personal covenants, to bind personally the owners of the reversion, their heirs and assigns. The Court could, through the instrumentality of a trustee, direct the conveyance of an estate, or the transfer of a right, but not the making of personal covenants, in the absence of the parties, to bind them personally, and those who may stand in privity with them. The Court possesses no such power as that inherently and the statute does not confer it."

In the case of *Hart* v. *Samson,* 110 U. S. 151, cited and relied on in *Worthington* v. *Lee, supra,* the Court said: "It would doubtless be within the power of the State in which the land lies to provide by statute that if the defendant is not found within the jurisdiction or refuses to make or to cancel a deed, this should be done in his behalf by a trustee appointed by the Court for that purpose." And ·in the case of *Arndt* v. *Griggs,* 134 U. S. 316, in passing upon a Nebraska Statute, and dealing with the right of the State to provide for notice to non-resident defendants, the Court said that the State had "control over property within its limits; and the condition of ownership of real estate therein, whether the owner be a stranger or a citizen, is subject to its rules concerning the holding, the transfer, liability to obligations,.

private or public, and the modes of establishing titles thereto. It cannot bring the person of a non-resident within its limits—its process goes not beyond its borders—but it may determine the extent of his title to real estate within its limits; and for the purpose of such determination may provide any reasonable methods of imparting notice."

Sec. 117 of Art. 16 of the Code of 1904, is as follows: "If in any suit in chancery, by bill or petition, respecting in any manner the sale, partition, conveyance or transfer of any real or personal property lying or being in this State, or to foreclose any mortgage thereon, or to enforce any contract or lien relating to the same, or concerning any use, trust or other interest therein, any or all of the defendants are non-residents, the Court in which such suit is pending may order notice to be given to such non-residents, of the substance and object of such bill or petition, and warning them to appear by a day therein stated." Sec. 127 of Art. 16, provides how the notice shall be given, and Sec. 91 authorizes the Court, whenever the execution of a deed of any kind is decreed, to appoint a trustee to execute it.

The prayer of the bill and the covenant here sought to be enforced is for conveyance to the appellee of the lot described in the lease, and while the Court could not enforce a decree requiring a non-resident to execute a deed for the property, its decree may be made effective under the provisions of the Code, by the appointment of a trustee to convey the title of the appellants, and to that end the proceedings are *in rem* and not *in personam*. *Miller's Equity Procedure*, Sec. 120; *White* v. *White*, 7 G. & J. 208; 22 *Am. & Eng. Ency. of Law*, 917; *Phelps on Juridical Equity*, Secs. 85, 223.

The order of publication, which is set out in the record, in addition to describing the land as the "lot of ground on the East side of a ten foot alley in the rear of Lombard and Frederick Streets in the City of Baltimore;" and as being subject to the annual ground rent of thirty-six dollars "created by the lease from Charlotte Bolgiano to Robert Bolton and others, dated July 18, 1835, and recorded in Liber T. K..

No. 262, folio 294, etc.," states that an undivided one-third interest in the reversion in said lot is vested in Edward Hollander, trustee for Amelia Hollander, for life, remainder to Charles S. and Levi M. Hollander, and that the remaining two-thirds interest is vested in said Charles S. and Levi M. Hollander, "as by reference to Liber R. O., No. 2243, folio 93 will appear," and that the plaintiff notified the defendants by letter of its desire to redeem said rent, and prepared and had sent to them for execution, a deed from them to the plaintiff for their interest in said lot which they declined to execute and returned. The reference to the lease under and by virtue of which the defendants received the annual rent of thirty-six dollars, to their interest in the reversion, and to the letter and deed sent to them, could have left no doubt in their minds as to the land referred to, and we think was sufficient notice to the defendants of the subject matter of the suit. *Mewshaw* v. *Mewshaw*, 2 Md. Ch. 12; *Phelps on Juridical Equity*, 313.

The petition of Lee M. Hollander was answered by the plaintiff, denying that he was a resident of the State of Maryland, and again alleging that he was a non-resident. The matter, as stated in the opinion of the Court below, was submitted, without proof, on the petition and answer, and his motion, and the motion of Charles S. Hollander, was, and we think properly, overruled. Where a case is submitted on petition and answer, the truth of the facts alleged in the answer is taken to be admitted, but the privilege of having a case so heard belongs only to the petitioner. The record does not disclose who set this motion down for hearing, but as the plaintiff in this case had no right to do so on the petition and answer, we must assume that it was done at the instance of the petitioner. *Miller's Equity Procedure*, Sec. 255 and notes.

After these motions were overruled, the defendants demurred to the bill on the following grounds: (1) that the bill does not show plaintiff's right to take advantage of the covenant in the lease; (2) that the plaintiff does not offer to

comply with the terms of the covenant; (3) that the covenant is not one running with the land, and cannot be enforced by the assignee of the lessees against the assignees of the lessor; and (4) that the covenant cannot be enforced against the assignee of the reversion because it violates the Rule against Perpetuities.

The bill charges that the plaintiff, on the 9th day of January, 1907, obtained by deed from Benjamin Krulewitch, administrator, the leasehold property, a description of which is set out in the bill and in the plaintiff's deed filed with the bill; that the lot of ground so obtained by the plaintiff is subject to an annual ground rent of thirty-six dollars, created by a lease from Charlotte Bolgiano to Robert Bolton and others, dated July 18, 1835, and recorded among the Land Records in Liber T. K., No. 262, folio 294, &c., and a certified copy of which is filed with the bill; "that the said lease contains a covenant on the part of said lessor, her heirs and assigns, that at any time during the continuance of said demise at the request and cost of said lessees, their heirs or assigns, and on their paying six hundred dollars, with all rent accrued and accruing, said lessor, her heirs and assigns, would cause to be delivered to said lessees, their heirs and assigns, a good and sufficient deed in fee simple, of and for the said property;" and that the plaintiff bought said property "upon the express condition that the said rent could be extinguished at its option at any time;" "that the reversion in and to said lot, with the right to collect the annual rent of thirty-six dollars, is now vested in said defendants, as follows: (a) Edward Hollander, trustee, one of the above-named defendants and trustee in the case of *Edward Hollander* v. *Amelia Hollander et al.*, in the Circuit Court of Baltimore City (Docket 24A, folio 245), holds a one undivided third interest therein, for Amelia Hollander, another of the above-named defendants, for life, with remainder to Charles S. Hollander and Lee M. Hollander, other above-named defendants, absolutely. (b) Said Charles S. Hollander and Lee M.

Hollander hold the other two-thirds undivided interest therein; as would appear by reference to the deed to said named defendants of said lot of ground, dated May 10, 1905, and recorded among the said Land Records in Liber R. O., No. 2143, folio 93, &c." That the plaintiff notified the nonresident defendants by letter of its desire to redeem said ground rent, and in January, 1907, prepared and had sent to them for execution, a deed to the plaintiff of their interest in said lot, which deed they refused to execute on the ground that by the terms of said lease the rent was not redeemable; that on the 20th of May, 1907, the plaintiff tendered to Edward Hollander, trustee, $210.30, it "being one-third of the said redemption money, together with the proportionate part of the accruing rent to the date thereof, and likewise, on May 31, 1907, tendered to Arthur W. Machen, Jr., Esq., solicitor of the defendants, Charles S. Hollander and Elsie Hollander, his wife, and Lee M. Hollander, the sum of $420.60, being their two-thirds share of said redemption money, together with their proportionate part of the accruing rent to said date;" and that at the same time plaintiff handed to said trustee and said solicitor a draft for a new deed, "requesting them, and each of them, to have the same properly executed so as to vest" the plaintiff "with an absolute fee simple title in and to the property," which deed is filed with the bill, and which they refused to execute or to have executed; and that said Machen was the solicitor of the defendants "in this matter." The prayer of the bill is for leave to bring into Court the sum of $630.90 so tendered, and that a trustee may be appointed to convey to the plaintiff the reversion in said lot, etc.

(1) The general rule is that the bill must state clearly plaintiff's right to the relief prayed, and counsel for the appellants insist that in compliance with this rule, the bill should have set out all of the assignments from the original lessees down to the plaintiff, in order to show the right of the plaintiff, as assignee of the leasehold estate, to the benefit

of the covenant sought to be enforced.  The leasehold inter-
est was conveyed by the lease to the lessees, their executors,
administrators and assigns, and the bill charges that the
plaintiff is the owner of the leasehold property described in
said lease by virtue of the deed from Benjamin Krulewitch,
administrator.   If the covenant is one that runs with the
lease, in favor of the assignee of the lessees, the right to the
leasehold interest created by the lease entitles the owner to
the benefit of the covenant.   In *Spencer's Case,* 1 Smith's
Leading Cases, p. 77, "It was resolved that the assignee of
the assignee should have an action of covenant.   So of the
executors of the assignee of the assignee; so of the assignee of
the executors or administrators of every assignee, for all are
comprised within this word (*assignees*), for the same right
which was in the testator, or intestate, shall go to his execu-
tors or administrators."   The bill in substance alleges that
the plaintiff is the assignee of the leasehold interest or estate
created by said lease.   It was not necessary to allege all the
circumstances tending to prove that fact.   While "every ma-
terial fact to which the plaintiff means to offer evidence ought
to be distinctly stated in the premises; for otherwise he will
not be permitted to offer or require any evidence of such
fact.   A general charge or statement, however, of the matter
of fact is sufficient; and it is not necessary to charge minute-
ly all the circumstances which may conduce to prove the gen-
eral charge; for these circumstances are properly matters of
evidence, which need not be charged in order to let them in
as proofs."   *Story's Equity Pleadings,* Sec. 28 (5th Ed.) ;
*Miller's Equity Procedure,* Sec. 92; *Phelps on Juridical
Equity,* Secs. 49, 55; *Mewshaw* v. *Mewshaw, supra; Dennis*
v. *Dennis,* 15 Md. 73.   The covenant is, at the request, etc.,
of the lessees, "their *heirs* and assigns," to convey to the les-
sees, their heirs and assigns, etc., yet the manifest intention
of the parties to the lease, as gathered from the whole instru-
ment, was to give to the lessees and those claiming under
them, viz: "their executors, administrators and assigns," the

benefit of the covenant. This, however, is not an action at law for a breach of the covenant, and the doctrine of specific performance does not depend upon such technical distinctions. Wherever, and without regard to the form and technical character of the contract, performance of a covenant in respect to lands would have been decreed between the parties to it, it will, in the absence of controlling intervening equities, "be decreed as between persons claiming under them in privity of estate, or of representation, or of title." 2 *Story's Eq.,* Secs. 788-790, 714, 715, 791 (5th Ed.) ; *Worthington* v. *Lee,* supra.

(2) The second objection to the bill is that the plaintiff does not offer to bear the "cost and charge" of the conveyance of the fee to him, which, it is claimed, include a counsel fee to the defendants for the examination of plaintiff's title in order to ascertain if he is legally entitled to the benefit of the covenant. In the case of *Oelrichs* v. *Spain,* 15 Wall. 21, the Court held that counsel fees were not recoverable in a suit on an injunction bond, the condition of which was to satisfy and pay "all costs, damages and charges" which should be occasioned by such writ of injunction, and said that the disallowance of such fees "rests on a solid foundation, and that the opposite rule is forbidden by the analogies of the law and sound public policy." This case was cited and relied on in *Wood* v. *State, use of White,* 66 Md. 61, where, in a suit on an injunction bond, the Court held that the plaintiff could not recover fees paid counsel for procuring a dissolution of the injunction. In *Johnson* v. *Glenn,* 80 Md. 369, a provision in a mortgage authorizing "the payment of all expenses incident to such sale," was said to include services of an auctioneer, cost of advertising, etc., but not an allowance for commissions. Counsel fees "are not allowable" as costs "in the absence of a statute or in the absence of some agreement or stipulation specially authorizing the allowance thereof." 11 *Cyc.* 104. While parties must be left to contract as they please, in the absence of a clear undertaking to do so, one

party to a contract should not be required to pay for services rendered for the benefit of the other, and whatever may have been held on the subject elsewhere, under the dcisions in this State the "cost and charge" which the plaintiff under the lease is required to pay, cannot be held to include a counsel fee to the defendants for examination of the plaintiff's title.

(3) The next ground of the demurrer is that the covenant to convey the fee to the lessees, "their heirs and assigns," is not a covenant running with the land. In *Glenn v. Canby,* 24 Md. 127, the Court stated as the established doctrine, "that a covenant to run with the land must extend to the land, so that the thing required to be done will affect the quality, value, or mode of enjoying the estate conveyed, and thus constitute a condition annexed or appurtenant to it; there must also be a privity of estate between the contracting parties, and the covenant must be consistent with the estate to which it adheres, and of such a character that the estate will not be defeated or changed by a performance of it." This is the doctrine asserted by Mr. Poe in 1 *Poe's P. & P.* 253 (1st Ed.), and reiterated by this Court in *Whalen v. B. & O. R. R. Co.,* 108 Md. 11. In *Taylor's Landlord and Tenant,* Sec. 261 (7th Ed.), it is said that "In order that a covenant may run with the land, its performance or non-performance must affect the nature, quality or value of the property demised, independent of collateral circumstances, or must affect its mode of enjoyment. It must not only concern the land, but there must be a privity of estate between the contracting parties." "In order that a covenant may run with the land, that is, that its benefit or obligation may pass with the ownership, it must respect the thing granted or demised, and the act covenanted to be done or omitted must concern the land or estate conveyed. Whether a covenant will or will not run with the land does not, however, so much depend on whether it is to be performed on the land itself as on whether it tends directly or necessarily to enhance its value or render it more beneficial and convenient to those

by whom it is owned or occupied, for if this be the case every successive assignee of the land will. be entitled to enforce the covenant." 11 *Cyc.*, 1080. "Such covenants, and such only, run with land as concern the land itself. in whatsoever hands it may be, and become united with, and form a part of, the consideration for which the land, or some interest in it, is parted with, between the covenantor and covenantee." *Washburn on Real Property,* Sec. 1205.

That the covenant in this case is within these requirements, as affecting the interest in the land demised, as enhancing the value thereof, and as forming a part of the consideration for the acceptance of the lease by the lessees, would seem to be free of doubt. The learned counsel for the appellants contend, however, that the performance of the covenant would defeat the estate of the lessor, and change the character of the estate of the lessee, and that it therefore falls within the restrictions of *Glenn* v. *Canby, supra.* But in *Taylor's Landlord and Tenant,* Sec. 262, it is said: "The right of renewal constitutes a part of the tenant's interest in the land, and a covenant to renew is consequently binding upon the assignee of the reversion. So the grant of an additional term *or the right to purchase* is, for many purposes, to be considered a continuation of the former lease; and if there is nothing in the lease to show that *such right* or renewal was intended to be confined personally to the lessee, they will enure to his assignees or executors, without their being particularly named."

In the case of *Maughlin* v. *Perry,* 35 Md. 352, the covenant on the part of the lessor was as follows: "And the said party of the first part, for himself, his heirs and assigns, doth hereby covenant and agree with the party of the second part, his heirs and assigns, to sell and convey unto the party of the second part, his heirs and assigns, the above described property and premises for the sum of fifteen hundred dollars at any time before the expiration of this lease or tenancy." The lessor died after having sold the property, and suit was

brought by the assignees of the lessee against the assignee
of the lessor for a specific performance of the covenant, and
the Court, in affirming a decree requiring the defendant to
convey the property to the plaintiff in accordance with the
terms of the covenant, said: "As a part of the consideration
of the lease constituting the contract between the parties,
Wells, the lessor, covenanted to sell the property to Hynson,
his lessee, for fifteen hundred dollars, at any time during the
existence of the lease.  This was a *continual obligation run-
ning with the lease* on the part of the lessor, with the option
in the tenant to accept the same or not, within that time.
But, it seems, Wells, before the right of Hynson to make his
election had determined, made sale of the property to Maugh-
lin, and died.  Maughlin, with notice of the recorded con-
tract between the parties, can acquire no greater right than
possessed by Wells."  The certain and definite rule deducible
from the authorities cited then is that if the covenant, as in
this case, touches and concerns the land or estate demised,
enhances the value thereof, and forms a part of the considera-
tion for the acceptance of the lease by the lessee, a Court of
equity will decree specific performance, not only as between
the parties to the contract, but, in the absence of intervening
equities controlling its conscience, also as between those
claiming under them in privity of estate.  24 *Cyc.* 1026;
*Gear on Landlord and Tenant,* Sec. 84; *Laffan* v. *Nagle,* 70
Am. Dec. 678; *Robinson* v. *Perry,* 68 Am. Dec. 455; *Kerr*
v. *Day,* 53 Am. Dec. 526; *Hager* v. *Buck,* 8 Am. Rep. 368;
*Spencer's Case,* 1 Smith's Leading Cases, 75.

(4) The remaining ground of the demurrer is that the
covenant cannot be enforced because of the Rule against Per-
petuities.  The nearest approach to a correct definition of a
perpetuity is found, this Court said in *Graham* v. *Whitridge.*
99 Md. 248, in *Lewis on Perpetuities,* and is as follows: "A
future limitation, whether executory or by way of remainder,
and of either real or personal property, which is not to vest
until after the expiration of, or will not necessarily vest with-

in, the period, fixed and prescribed by law for the creation of future estates and interests, and which is not destructible by the person for the time being entitled to the property subject to the future limitations except with the concurrence of the individual interested under that limitation." In *Gray on Perpetuities,* Sec. 230 (2nd Ed.), the author says, that covenants for perpetual renewal are treated as an exception to the Rule against Perpetuities, but that it is "hardly necessary to create an exception to meet the case—the covenant to renew is a part of the lessee's present interest." And, in Sec. 230b, that "An option to a tenant for years to purchase a fee, exercisable at a remote time, is bad as violating the Rule against Perpetuities. * * * The only reason for considering the Rule against Perpetuities as inapplicable to such an option is the analogy to covenants for renewal treated in the two preceding sections. But the exemption from the Rule in the case covenants for renewal is either an exception which there is no reason to extend, or is to be explained, as it is in Sec. 230, on the ground that the covenant to renew is a part of the present interest, a ground which cannot well be taken when the present interest is a tenancy for years, and the interest to be purchased is a fee." While the statement of Mr. Gray, that the option to a tenant to purchase is bad, is supported by the authorities cited by the appellants, the distinction he makes between such an option and a covenant for renewal is not altogether satisfactory. The application of the Rule is not determined by the character of the estate or interest conveyed, but by the answer to the question, will it necessarily vest within the time fixed by the Rule? If the fee covenanted to be conveyed in the covenant under consideration is to be regarded as a future limitation, it may not of course necessarily vest under the terms of the covenant within the prescribed time. Likewise the estate to be conveyed to the lessee under the covenant for a renewal of the lease, at the option of the lessee, and upon payment of a fine, etc. If the covenant to renew is a part of the lessee's present interest, so is the covenant for a conveyance of the fee. The

estate acquired under the new lease, while of the same char-
acter, is for a different term, and just as much a new and
distinct estate as the estate acquired under the covenant for
the conveyance of the fee.   If the estate conveyed to the
lessee, and the lessee's present interest, is, in the one case, not
a term for ninety-nine years, but a term for ninety-nine years
*with the right of renewal,* so, in the other case, the estate con-
veyed to the lessee, and the lessee's present interest, is not a
definite term, but the term *coupled with the right to acquire
the fee.*   In this connection we may again refer to the state-
ment in *Taylor's Landlord and Tenant, supra,* that "the grant
of an additional term, or of a right to purchase is, for many
purposes, to be considered a continuation of the former lease."
But however this may be, our predecessors, in view of the
fact that titles to property of great value in Baltimore City,
and elsewhere in the State, are held under leases of the char-
acter of the one in this case (the forms of which, generally
used, are suggested in *Latrobe's Justices' Practice,* pp. 463,
464 (7th Ed.), and *Carey's Forms and Precedents,* pp. 364-
365), have somewhat relaxed the technical rules applicable
to such estates, for the purpose of enforcing the contracts of
the parties thereto.   In *Banks* v. *Haskie,* 45 Md. 207, where
a bill was filed for specific performance of a covenant for re-
newal in a lease for ninety-nine years, renewable forever, the
Court in discussing the character of estates created by such
leases said:   "This character of tenure is, so far as we know
among the States, peculiar to Maryland.   It has not been
generally adopted so far as we are informed in any other
State.   It was introduced here in colonial times, and has been
a favorite system of tenure from a very early period.   A large
city has been built, and improved, and a vast majority of the
real estate in Baltimore is now held under it.   It is not open
to any of the objections against perpetuities.   Property is not
thereby placed *extra commercium.*   On the contrary, these
leasehold interests devolve upon the personal representatives
of the owner, are in terms made assignable, and they, as well
as the ownerships in fee under the denomination of 'ground

rents,' are subjects of daily transfer, and are constantly sought for a safe investment of capital. It is a peculiar description of tenure which has been sustained by our Courts, and approved and fostered by our people. While the ground rents from their nature are usually of a fixed value, the leasehold interests are more or less fluctuating. In many, and indeed in most cases, they have largely increased in value with the growth of the city. And most extensive and costly improvements have been and are daily made by owners of such interests on grounds thus leased."

Again in the case of *Myers* v. *Silljacks,* 58 Md. 319, speaking of leases of this character, JUDGE ALVEY said: "We all know that estates dependent upon leases like the one before us are exceedingly common in this State, and particularly so in the City of Baltimore. Both the reversionary freehold and the leasehold estates are the subjects of daily transfers and assignments, and they constitute a considerable portion of the substantial wealth of the people. While the one estate is subject exclusively to the law that governs real property, the other is mainly controlled by the law that governs personalty; the one estate passing by descent, and being subject to the law of partition among heirs, while the other is the subject of administration, and is governed by the law that directs distribution of the personal estate. Both estates alike are the subjects of mortgage and judgment liens, and are constantly being sold and transferred in the enforcement of such charges. It is of the utmost importance, therefore, that the tenure be maintained with entire certainty; that the true relation of the parties to the property be at all times fully recognized, so that their exact rights may be known and enforced, and that third parties may know how to deal with respect to those rights." And again, in the case of *Worthington* v. *Lee, supra,* the Court said, that the above cases fully state the reasons why this Court "has applied a more liberal doctrine to these cases than that applied in the English Courts; and it has done so with special reference to the pecu-

liar nature and condition of the local titles that exist in the City of Baltimore." Without detracting from the great weight and respect to which the authorities cited by appellants are justly entitled, we must adhere to the previous decisions of this Court, and hold that the lease in question did not place the property *extra commercium,* and that the rights of the parties under the covenants therein are "not open to any of the objections against perpetuities."

It follows from what we have said, that the decree of the Court below must be affirmed.

> *Decree affirmed, with costs and cause remanded.*

Subsequently the following supplemental opinion was delivered by THOMAS, J.:

Since the filing of the opinion in this case our attention has been called to the agreement of counsel and the certificate of the Clerk of the Circuit Court of Baltimore City, filed in this Court on the day of the argument, whereby it appears that the petition and motion of Lee M. Hollander was set down for hearing by the plaintiff.

In the case of *Paul* v. *Nixon,* reported in a note to *Jones* v. *Magill,* 1 Bland, 177, CHANCELLOR HANSON said: "If indeed the defendant was entitled to have the case set down for final hearing, on bill and answer, it must be on terms similar to those of the complainant's setting down, viz, that everything contained in the bill is true, that is to say, the rule must be reversed. But there is no such practice." *Miller's Eq. Procedure,* p. 319, note 4.

Who is a non-resident, is a mixed question of law and fact. The petitioner states in his petition "That he has lately been in Scandinavia for a year and a half for the purpose of studying philology, and is now in the city of New York for the purpose of using libraries there situated, but that your petitioner has never abandoned his residence and citizenship in the State of Maryland." It therefore appears that he has been out of the State at least a year and a half. The peti-

tion does not say when he expects to return to Maryland, or whether he intends to return at any certain time, and it may be that he intends to remain out of the State indefinitely. If he has been out of the State for a year and a half with no intention of returning, "or with the intention of returning at some indefinite time in the future, as circumstances may dictate or permit," he is a non-resident within the meaning of Section 123 of Art. 16 of the Code, and may be proceeded against as such, notwithstanding he may not intend to abandon his domicil in this State, for, as was said in *Dorsey* v. *Kyle,* 30 Md. 512, "In contemplation of the attachment law, the domicil may be in this State, while the actual residence is in another." The term "non-resident" in Sec. 123 of Art. 16 of the Code, means a "person who doth not reside in this State," as defined in the law relating to attachment. *Dorsey* v. *Dorsey,* 30 Md. 531; *Miller's Eq. Procedure,* Sec. 123, p. 160.

In the case of *Dorsey* v. *Dorsey, supra,* the defendant stated in his petition that he left his home in Maryland to visit his wife, who was then sick at her father's in Winchester, Virginia, with the intention of returning in a few days, but owing to the position of the armies about Winchester and Harper's Ferry he was unable to do so and was forced to wait for the close of the Civil War, although at all times intending to return. While he was absent from the State he was proceeded against as a non-resident, and the Court held that he was a non-resident within the meaning of the provision of the Code.

In the case of *Riscwick* v. *Davis,* 19 Md. 82, in disposing of an exception to evidence offered to show the intention of the defendant to return to the State, at some indefinite time, the Court said: "Residence and domicil are sometime distinct things. *In the matter of Thompson,* 1 Wend. 43, it was decided that residence out of the State for the purpose of being subject to foreign attachment, did not import that domicil should be out of the State also. *Frost* v. *Bresbin,* 19 Wend. 14. In *Haggart* v. *Morgan,* 1 Seldon, 428, the defend-

ant offered to prove that, at the time of taking out the attachment, he was not a non-resident, but a resident of the City of New York, that he had been absent about three years, attending a law-suit at New Orleans, and returned in the spring of 1848; the judge excluded the evidence, on the ground that the offer itself showed the debtor to be a non-resident, within the spirit of the Act. In the case at bar, the defendant had been absent four or five years, and *non constat*, but he might be absent as many years longer. The evidence being foreign to the issue, should have been excluded."

Mr. Poe says: "It may be stated, as the result of the authorities, that where a citizen of this State, domiciled here, goes abroad on business or pleasure for a brief period, without any intention of abandoning or changing his domicil, and with a fixed purpose to return at a definite or specified time, retaining and intending to retain, in the meantime, both his domicil and political citizenship, he cannot properly be treated as a non-resident within the meaning of the attachment law, simply because of his temporary absence from his residence and home. Where, however, he leaves the State and remains absent for any considerable period, without any intention of returning, or with the intention of returning at some indefinite time in the future, as circumstances may dictate or permit, he will be liable to be proceeded against as a non-resident, notwithstanding he may not have acquired a fixed residence in any other State or country." 2 *Poe's P. & P.*, sec. 506 (3rd Ed.).

On the facts stated in the petition we think the plaintiff had a right to proceed against the petitioner as a non-resident, and that, therefore, there was no error in the order of the Court overruling the motion to quash the proceedings against him. As we have said, the plaintiff had no right to have the matter set down for hearing on the petition and answer, but as it appears he did so, we must assume that it was done with the petitioner's consent, and he, therefore, has no right to complain if the motion was properly disposed of on the facts stated in his petition.