(Decided 26th March, 1884.)

HENRIETTA S. WORTHINGTON, and DYE W. WORTHINGTON, her husband, SAMUEL RIDGELY of S. N. R., and others *vs.* JAMES FENNER LEE, and MARY CORNELIA LEE, his wife, and others.

*Renewal of lease—Specific performance—Equity pleadings—Injunction—Landlord and Tenant—Reversioner—Assignment of the Unexpired term—Non-residents—Art. 16, secs. 67 and 135, of the Code—Equity jurisdiction—Decree in Personam—Decree for Specific performance.*

Wherever the specific execution of a contract or covenant respecting lands would have been decreed as between the original parties, it will be decreed as between all persons claiming under them in privity of estate, or of representation, or of title, unless other controlling equities have intervened. And this without regard to the form or technical character of the contract.

In order to obtain the relief sought, it is necessary that the allegations of the bill should fully and exactly disclose the nature and extent of the legal rights and interests of those against whom the restraining and coercive power of a Court of equity is invoked.

To entitle the plaintiff to the aid of the Court by way of injunction to restrain proceedings at law, the substance of the ground of relief must not only be fully alleged, but the bill must show grounds upon which the action at law may be sustained; or other-

wise the bill is demurrable. In other words, the bill must show a real necessity for coming to the Court for the injunction.

When the relation of landlord and tenant is once established, it attaches to all who may succeed the tenant, immediately, or remotely; and the succeeding tenant is as much affected by the acts and solemn acknowledgments of his predecessor, in regard to the estate or title, as if they were his own.

But if a party purchase what is in reality but a leasehold estate, and take of the lessee, or his assignee, a transfer or conveyance, in form an absolute conveyance in fee; yet, in judgment of law, such party is only assignee of the term, and tenant of the lessor.

The mere form of the deed, though professing to pass a fee simple estate, will not operate a disseisin of the superior landlord's estate, but only as an assignment of the unexpired term.

And the mere recital in the deed that the rent reserved in the original lease has "become lapsed and barred by limitations, because not demanded," has no effect, and can in no way prejudice the right of the reversioner.

The owner of the leasehold interest under a renewable lease, for ninety-nine years, made an absolute conveyance of the property as in fee, it being recited in the deed that the rent reserved in the lease had "become lapsed and barred by limitations, because not demanded." The parties interested in the reversion were numerous, and in fact unknown to the purchaser. They were scattered over several States of the Union, and never interested themselves to come forward to assert their claim. The rights and title, both of the reversioners and termor, were allowed to remain in a state of dormancy, until after the lease had expired. On a bill subsequently filed by the purchaser, for a specific performance of the covenant for renewal and for an injunction to restrain an action of ejectment for the recovery of the premises, it appeared that the plaintiff had not done anything knowingly in hostility to the title of the reversioners; but on the contrary as soon as a claim to the property was made, she acknowledged her relation to it, and offered to pay the arrearages of rent. HELD:

That the case stood upon its own special circumstances, and under those circumstances relief should be granted.

The defendants were some eighty odd, or ninety in number, many of them made defendants in a very informal way. Of this number a considerable portion were non-residents, and not personally sub-

Worthington, *et al. vs.* Lee, *et al.*

ject to the jurisdiction or control of the Court.  Some of them appeared by attorney and pleaded to the power and jurisdiction of the Court, to grant the relief prayed.  While others, non-residents, and only served by publication, did not appear at all, and as against them interlocutory decrees were entered in default of appearance and answer.  HELD :

1st. That the fact that the property, the subject-matter of the covenant, was situate within the jurisdiction of the Court, did not relieve the case of the difficulty presented by the question, how a decree for specific performance and injunction could be made effective as against the parties to the bill.

2nd. That the provisions of the Code, Art. 16, secs. 67, 135, did not apply in a case like the present, where the object of the decree was to secure to the plaintiff the specific execution of the covenant whereby she was entitled to obtain a renewed lease, with important and valuable personal covenants of the lessors, and without which it would not be an instrument of the character contemplated by the covenant decreed to be performed.

3rd. That the Court could direct a lease for ninety-nine years to be made by a trustee, but not with covenant for renewal, and other personal covenants, to bind personally the owners of the reversion, their heirs and assigns.

4th. That the Court did not possess inherently, and the statute did not confer the power to direct, through the instrumentality of a trustee, the making of personal covenants, in the absence of the parties, to bind them personally, and those who might stand in privity with them.

5th. That the decree for specific performance being *in personam* and not *in rem*, to have effect beyond the jurisdiction of the State where it is rendered, it must be founded either upon personal service of process, or upon a voluntary appearance of the party.

6th. That so far as the parties were within the jurisdiction of the Court, or were bound by the decree, they might be restrained from taking any action at law in the Courts of this State for the recovery of the property; but as to those parties residing in other States, they could not be restrained by injunction from the State Court from suing in the Circuit Court of the United States.  Their right so to sue must be determined by the United States Court.

7th. That upon the bringing into Court by the plaintiff, to be paid to the parties shown to be entitled, the amount of rent due such parties,

to the date of the decree, together with the sum as fixed by the original lease as a renewal fine, she would be entitled to a decree for specific performance against such of the parties as might be shown to have title; and as to all such parties as were within the jurisdiction and reach of the Court, they might be required to execute to her a renewal of the lease. But as to such of the parties as might be beyond the jurisdiction and control of the Court, the decree could only stand as an adjudication upon the subject-matter.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, IRVING, and BRYAN, J.

*R. F. Brent, Charles H. Stanley,* and *Michael A. Mullin,* for the appellants.

*Arthur George Brown,* and *William M. Merrick,* for the appellees.

ALVEY, C. J., delivered the opinion of the Court.

This is a case for specific performance of a covenant for renewal of a lease for ninety-nine years, renewable forever, and for an injunction to restrain an action of ejectment for the recovery of the premises. The relief prayed was granted by the decree of the Court below, and the defendants have appealed to this Court for a review.

In 1772, Mrs. Areanna French, being the owner of a certain lot or parcel of ground, situate in Baltimore Town, now city, leased the same to William Spencer, for the term of ninety-nine years. The annual rent reserved was the nominal sum of £1, and the lease contained the usual covenants with respect to improvements, the punctual payment of the rent reserved, with right of distress, and

right of re-entry and forfeiture of the term, for non-performance of the covenants on the part of the lessee and his assigns. It also contained the covenant for renewal, which is in the following form: "That the said Areanna French, her executors, administrators or *assigns*, shall, and will, upon the request, proper cost and charges, of the said William Spencer, his heirs, executors, administrators, and *assigns*, and upon his or their paying, or tendering in payment, the sum of twenty shillings sterling money, as and in the name of a fine for renewment, *at any time during the continuance of this demise,* make and execute to him, the said William Spencer, his heirs, executors, and *assigns*, a new lease of the aforesaid demised ground and premises, for other ninety-nine years, to take effect and commence at the end of the term for which the same is hereby demised, under the same rents, and with like covenants, clauses, and agreements as are herein contained, so that this present demise may be renewable and renewed forever." It is also expressly provided, that in case of default in the payment of the rent reserved, "for the space of six months, next after any of the days or times on which the same ought to have been paid as aforesaid, the same being first demanded on the premises," it should be lawful for the lessor or her assigns, if to her or them it should seem meet, to re-enter the demised premises, or any part thereof in the name of the whole, and the same again to have, hold, re-possess and enjoy, as of her or their former estate or title ; "and upon any such default as aforesaid, contrary to the true intent and meaning of these presents, these presents, and every clause, matter and thing herein contained, as from and against her, the said Areanna French, her heirs and assigns, shall immediately thereupon cease, determine, and become absolutely null and void, to all intents and purposes whatsoever."

As will be observed, the covenants and clauses of the lease were not, in all respects, drawn with technical

accuracy; and in the covenant for renewal, the lessor did not covenant for herself, her *heirs and assigns*, but for herself, her executors, administrators *or assigns*. And if this were an action at law against the heirs of the lessor for a breach of that covenant, it being but a personal covenant, though running with the land, it might be a very serious question whether a recovery could be had, the heirs not being named in the covenant. *Shep. Touch.*, 178; *Platt on Covenants*, 449.

But the application of the doctrine of specific performance does not depend upon any such technical distinction. While at law, contracts and covenants to sell, lease, or convey land, are considered simply as personal and executory contracts and covenants without reference to any trust or charge thereby created, yet, in the contemplation of a Court of equity, from the time of the contract or covenant, the vendor or lessor, and his heirs, or assigns, except where the latter may be protected for want of notice, are regarded as trustees for the vendee or lessee, and those who may represent him. Therefore, wherever the specific execution of a contract or covenant respecting lands would have been decreed as between the original parties, it will be decreed as between all persons claiming under them in privity of estate, or of representation, or of title, unless other controlling equities have intervened. 1 *Sto. Eq.*, secs. 788, 789, 790. And this without regard to the form or technical character of the contract. 1 *Sto. Eq.*, secs. 714, 715 *and* 791.

The allegations of the bill in this case are not sufficiently specific and definite in reference to the parties and their rights in the property involved. For while we may well understand the difficulty, under the peculiar circumstances of this case, of so framing the bill as to present with precision the nature and the exact extent of the rights of each and all of the parties who may make claim to the reversion; still, in order to obtain the relief sought, it is

necessary that the allegations of the bill should fully and exactly disclose the nature and extent of the legal rights and interests of those against whom the restraining and coercive power of a Court of equity is invoked. And as the bill is defective in this respect, it will have to be amended before relief can be granted, if the party be entitled to relief under the facts of the case.

It appears from the evidence that Mrs. French, the original lessor, died without issue ; though it is alleged in the answer that she left a will, and that Robert R. Richardson, as her executor, received the rents that accrued under the lease for several years. Of the numerous parties made defendants, even supposing them all to be collateral heirs of the original lessor, it is more than probable that many of them are without interest, by reason of interruptions in the course of descent, by devises and other modes of disposition. The Court cannot decree specific performance against parties, and enjoin legal proceedings by them, upon the mere assertion that they make some claim, whether that claim be well founded at law or not. In all cases like the present, if a Court of equity interposes at all it is to restrain the assertion of the legal right, simply because there is an equity that affects the conscience of the party having such legal right. Hence it is a settled principle that to entitle the plaintiff to the aid of the Court by way of injunction, to restrain proceedings at law, the substance of the ground of relief must not only be fully alleged, but the bill must show grounds upon which the action at law may be sustained ; or otherwise the bill is demurrable. In other words, the bill must show a real necessity for coming to the Court for the injunction. *Balls vs. Margrave,* 3 *Beav.,* 284 ; *D. S. & W. Railway Co. vs. Serrell,* 2 *DeG. & S.,* 353 ; *Kerr on Injunctions,* 16.

Assuming, however, that the parties defendants may be shown to have an interest in the subject-matter, it

appears that the term or leasehold estate was acquired by Elizabeth Frisby, but how or from whom does not distinctly appear, and, perhaps, it is not now very material to inquire. She made a sub-lease in 1850 to Hugh Donnelly, and the latter afterwards assigned that sub-lease to his wife; and it was under that sub-lease that Donnelly and wife became possessed of the property, at an annual rent of $219. The residue of the original term, together with the rent reserved on the sub-lease, by mesne assignments, as we gather from the documentary evidence in the case, became vested in Mrs. Rebecca Somerville; and her executors, in 1864, under her will, sold the leasehold estate, with the rent reserved on the sub-lease, to Hugh Dooner, and conveyed the same, subject to the sub-lease, by terms appropriate to convey a reversionary fee simple estate, instead of a mere leasehold. In that deed, however, by express reference, the title is deduced from Elizabeth Frisby. And a few days thereafter, Hugh Dooner, by a like deed of a reversionary fee simple estate, conveyed all his right and estate, so by him acquired, to Mrs. Carroll, now Mrs. Lee, subject to the sub-lease to Donnelly, and she has been in the receipt of the rent reserved on that sub-lease down to the time of filing the bill in this case. The term of the original lease expired on the 1st of May, 1871, and the bill in this case was filed on the 20th of Feb. 1878,—a little less than seven years from the termination of the leasehold estate.

It does not appear that any rent has been paid on the original lease for fifty or sixty years preceding the expiration of the term. It is not shown, however, that there was any demand ever made, or that there was ever any re-entry attempted, for default of payment, or to forfeit the term, under the express conditions of the lease.

It is objected on the part of the defendants, that the plaintiff, Mrs. Lee, is not entitled to relief by specific execution of the covenant for renewal, upon several

grounds: 1st. Because she, and those under whom she claims, disclaimed and repudiated the estate and title of the superior landlord, by dealing with the property in a manner wholly inconsistent with the existence of the reversionary estate ; 2d. because of the default in the payment of the rent; and, 3d. because of the great lapse of time, after the expiration of the term, before making the application for relief. But, under the very peculiar circumstances of this case, this Court is of opinion that neither of the grounds of objection relied on, nor all of them combined, will afford sufficient reason for denying relief by specific execution of the covenant for renewal.

It is certainly true that if we were required to decide this case upon the strict doctrine applicable to such cases that obtains in the English Court of Chancery, we should be bound to refuse relief. There, not only short delay in making the application, but any default in the performance of covenants that may be treated as conditions precedent to the right of renewal, such as those for the payment of rent, or the making of repairs, will defeat the claim to relief. *Finch vs. Underwood,* 2 *Ch. Div. on App.,* 310. But this Court, without departing from principle, has applied a more liberal doctrine to these cases than that applied in the English Courts; and it has done so with special reference to the peculiar nature and condition of the local titles that exist in the City of Baltimore. The reasons for this liberal application of established principles in the doctrine of specific performance, will be found fully stated in the recent cases in this Court of *Banks vs. Haskie,* 45 *Md.,* 207, and *Myers, et al., Adm'rs of Presstman vs. Silljacks,* 58 *Md.,* 319, and it is therefore unnecessary to repeat them here ; and applying the principle laid down in those cases to the present, we think there is no sufficient ground shown for refusing relief by specific performance, provided the proper parties are within the jurisdiction and power of the Court to execute the decree.

With respect to the objection taken, that the plaintiff, and those under whom she claims, had disaffirmed the title of the landlord, and thereby forfeited the lease, in our opinion, that objection is not well founded.   It is very true, as contended by the defendants, that when the relation of landlord and tenant is once established, it attaches to all who may succeed the tenant, immediately or remotely; and the succeeding tenant is as much affected by the acts and solemn acknowledgments of his predecessor, in regard to the estate or title, as if they were his own. *Jackson, et al. vs. Davis*, 5 *Cow.*, 123.   But it is equally well established, if a party purchase what is in reality but a leasehold estate, and take of the lessee, or his assignee, a transfer or conveyance in form an absolute conveyance in fee, yet, in judgment of law, such party is only assignee of the term, and tenant of the lessor.   *Jackson, et al. vs. Davis, supra.*   The old forms of conveyances or assurances, by fines and feoffments, operated to produce different results.   If the tenant acknowledged or affirmed, by matter of record, the fee to be in a stranger, or if he aliened the estate in fee by feoffment, with livery, which operated upon the possession and effected a disseisin, he forfeited the lease.   But, as Chancellor KENT correctly says (4 *Kent, Com.*, 106), conveyances with us are in the nature of grants, and as grants pass nothing but what the grantor may lawfully grant, it would seem to follow, of course, upon sound legal principles, even without any statute provision, that conveyances to uses would not work a forfeiture of the particular estate.   And this is in accordance with the provision of our Code, Art. 24, secs. 1, 12.   The mere form of the deeds, therefore, though they professed to pass a fee simple estate, did not operate a disseisin of the superior landlord's estate, but only as assignments of the unexpired term.   And as to the mere recital in the deed from the executors of Mrs. Somerville to Dooner, that the rent of £1, reserved in the original lease, "having

become lapsed and barred by limitations, because not demanded," that has no effect, and can in no way prejudice the right of the reversioner.

Then, as to the default in the payment of the rent reserved in the original lease, as also the delay in making the application for relief, the peculiar circumstances of the case would seem to furnish a reasonable excuse and explanation of those alleged grounds of objection. The parties interested in the reversion would seem to be very numerous, and were in fact unknown to the plaintiff. They seem to be scattered over several States of the Union, and they never interested themselves to come forward to assert their claim. In such state of things, it is not surprising that the rights and title, both of the reversioners and the termor, were allowed to remain in a state of dormancy. Mrs. Lee herself does not appear, knowingly, to have done anything in hostility to the title of the reversioners; but, on the contrary, so soon as the claim to the property was made, she acknowledged her relation to it, and offered to pay the arrearages of rent. There has, therefore, been no *wilful neglect or refusal* on her part to renew the lease; and it is only where there has been *gross laches*, or conduct amounting to *bad faith*, on the part of the lessee, or his assigns, that the Court will withhold its aid. This case is wholly unlike that of *Myers vs. Silljacks, supra*, where the title of the landlord was utterly repudiated and denied, and every attempt to assert his right and title was resisted to the last extremity. The case stands upon its own special circumstances, and it is with reference to those circumstances that we hold that relief should be granted.

The most difficult and important question in the case is that in regard to the manner of making the decree effective. There are eighty odd or ninety persons defendants in this case, many of them made defendants in a very informal way. Of this number a considerable portion of

them reside beyond the limits of this State, and are not personally subject to the jurisdiction or control of the Court. Some of them have appeared by attorney and pleaded to the power and jurisdiction of the Court to grant the relief prayed, insisting that it is their constitutional right to sue for the recovery of their property in the Courts of the United States; while others, non-residents, and only served by publication, have not appeared at all, and as against whom interlocutory decrees have been entered in default of appearance and answer. In this state of the parties, the question is, how is a decree for specific performance and injunction to be made effective, as against the parties to the bill?

The fact that the property, the subject-matter of the covenant, is situate within the jurisdiction of the Court, does not relieve the question of the difficulty. If the application was for a sale of the property, or for a simple conveyance thereof, those objects could be accomplished by the appointment of a trustee, as provided by the Code, Art. 16, secs. 67, 135. But those provisions of the statute do not apply in a case like the present, where the object of the decree is to secure to the plaintiff the specific execution of the covenant, whereby she is entitled to obtain a renewed lease, with important and valuable personal covenants of the lessors, and without which it would not be an instrument of the character contemplated by the covenant decreed to be performed. The Court could direct a lease for ninety-nine years to be made by a trustee, but not with covenant for renewal, and other personal covenants, to bind personally the owners of the reversion, their heirs and assigns. The Court could, through the instrumentality of a trustee, direct the conveyance of an estate, or the transfer of a right, but not the making of personal covenants, in the absence of the parties, to bind them personally, and those who may stand in privity with them. The Court possesses no such power as that inherently, and the statute does not confer it.

Worthington, *et al. vs.* Lee, *et al.*

Decrees for specific performance are against the person bound by the contract; they are *in personam* and not *in rem*. *White vs. White*, 7 *G. & J.*, 208, 211; *Massie vs. Watts*, 6 *Cranch*, 148; 1 *Sto. Eq.*, sec. 742. Therefore it is essential to the effective character of the decree, that the parties against whom it is made, be within the jurisdiction and reach of the Court. If they be beyond its reach and coercive power, the Court is without the means of enforcing its decree. Neither process of contempt nor injunction will aid the Court, or affect the parties beyond its jurisdiction. *Carron Iron Co. vs. Maclaren, et al.*, 5 *House of Lords Cases*, 416, 436. And as to those parties brought in by mere constructive notice by publication, while the decree against them will bind them in the Courts of our own jurisdiction, it will have no effect in any other Court or jurisdiction. Being a mere personal decree, to have effect beyond the jurisdiction of the State where it is rendered, it must be founded either upon personal service of process or upon a voluntary appearance of the party.

In the very recent case in the Supreme Court of the United States, of *Hart vs. Sansom*, 110 *U. S.*, 151, decided since this case was argued, this subject is very fully considered. In that case was involved the validity of a decree of a State Court, founded upon constructive notice by publication, decreeing the cancellation of certain deeds, and the removal of a cloud from the title of the plaintiff; and it was held that such decree could not be set up against the party thus notified, in an action brought by him for the recovery of the land, in the Circuit Court of the United States. The Court says: "Generally, if not universally, equity jurisdiction is exercised *in personam*, and not *in rem*, and depends upon the control of the Court over the parties, by reason of their presence or residence, and not upon the place where the land lies in regard to which relief is sought. Upon a bill for the removal of a cloud

upon title, as upon a bill for the specific performance of an agreement to convey, the decree, unless otherwise expressly provided by statute, is clearly not a judgment *in rem,* establishing a title in land, but operates *in personam* only, by restraining the defendant from asserting his claim, and directing him to deliver up his deed to be cancelled, or to execute a release to the plaintiff."

The Court concedes that it would be within the power of the State in which the land lies to provide by statute that if the defendant is not found within the jurisdiction, or refuses to make or to cancel a deed, that this should be done in his behalf by a trustee appointed by the Court; but it expressly declares that the Court has no inherent power, by the mere force of its decree, to annul a deed or to establish a title, as against such party. And in conclusion the Court says, "Such a decree, being *in personam* merely, can only be supported against a person who is not a citizen or resident of the State in which it is rendered, by actual service upon him *within its jurisdiction;* and constructive service by publication in a newspaper is not sufficient. The Courts of the State might perhaps feel bound to give effect to the service made as directed by its statutes. But no Court deriving its authority from another government will recognize a merely constructive service as bringing the person within the jurisdiction of the Court. The judgment would be allowed no force in the Courts of any other State; and it is of no greater force, as against a citizen of another State, in a Court of the United States, though held within the State in which the judgment was rendered."

So far, then, as the parties are within the jurisdiction of the Court, or are bound by the decree, they may be restrained from taking any action at law in the Courts of this State, for the recovery of the property; but as to those parties residing in other States, they cannot be restrained by injunction from the State Court from suing in

the Circuit Court of the United States.    Their right so to sue must be determined by the United States Court.

We shall reverse the decree appealed from, and remand the cause, that the pleadings and proceedings be amended; and upon the plaintiff bringing into Court, to be paid to the parties that may be shown to be entitled, the amount of rent due such parties, to the date of the decree, together with the sum as fixed by the original lease as a renewal fine, the Court below will enter a decree for specific performance, against such of the parties as may be shown to have title; and as to all of such parties as are within the jurisdiction and reach of the Court, they may be required to execute a renewal of the lease to Mrs. Lee.    But as to such of the parties as may be beyond the jurisdiction and control of the Court, the decree can only stand as an adjudication upon the subject-matter.

What effect the Act passed at the present session of the General Assembly, entitled an "Act to simplify the proceedings for the renewal of leases for ninety-nine years, renewable forever," may have to give force and effect to the decree, is a question that we need not now decide.    It will be time enough to decide that question when it is actually presented.

> *Decree reversed, and*
> *cause remanded.*

(Decided 26th March, 1884.)