## JAMES KING

*vs.*

## ERNEST KAISER ET AL.

*Specific performance*: rule for——. *Judicial notice*: *political di-
visions of State. Deeds*: *descriptions; clearness. Con-
tracts*: *mutuality; options. Leases*: *contract to
renew——; when the new lease will not be
considered an extension of the original.*

To maintain a bill for specific performance, the agreement
must be fair, just, reasonable, *bona fide,* certain in all its parts,
and made upon good and valuable consideration.          p. 217

It is a form of relief which is never *ex debito justitiæ.* ·p. 217

Courts have judicial notice of the prominent geographical
features of the territories over which, or State in which they
exercise jurisdiction, and of the geographical positions of its
political divisions, such as counties, etc.          p. 217

A contract leasing land was dated "Baltimore County," and
the description called for boundaries, etc., that were in that
county, it was: *Held,* that it could not be objected, in opposi-
tion to a bill for the specific performance of the contract, that
it nowhere appeared to be land located in Maryland.          p. 217

While a lease whose specific performance is sought might
be more precise in regard to the description of the land de-
mised, yet if it be such that a competent surveyor could, on the
ground, identify and mark the land out definitely, it is suffi-
cient; it is immaterial, that to locate some of the landmarks it
might be necessary to reverse the calls.          p. 218

Where a lease of certain property provides for a fixed term,.
at a rent named, and then provides that, upon the payment of a
certain increased rent, the lease will be renewed for another
and different term, the specific performance of the agreement
can not be refused on the score of uncertainty.          p. 219

And such a lease not being an estate above seven years, is not
within the provisions of section 1 of Article 21 of the Code,
relating to the sealing, acknowledging and witnessing of such
instruments.          p. 220

This agreement did not contemplate any "renewal" or extension of the then existing lease, but the execution of a new lease, and does not come under the provisions of the Act of 1884 or of 1888.                                                     p. 220

Such an agreement presents no such want of mutuality as to justify the refusal of the relief prayed.                         p. 219

Mutuality of a contract means an obligation on each party to the contract to do or permit something in consideration of an act or promise of the other.                        ·        p. 219

It does not imply that every stipulation is absolute and unqualified.                                                       p. 219

Even if regarded merely as an option, such agreement is enforceable.                                                      p. 221

A lease for five years, with an agreement therein that upon the payment, after such time, of an increased rent, the lease will be *renewed* for a term of 20 years: *Held,* that such agreement did not provide for an extension of the original lease, but for the giving of a *new lease,* and the agreement is not to be regarded as a lease for 25 years, and is not in violation of section 1 of Article 21 of the Code.                    ·        p. 220

*Decided May 5th, 1915.*

Appeal from Circuit Court No. 2 of Baltimore City. (AMBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Daniel S. Sullivan* and *Albert S. J. Owens,* for the appellant.

*Charles Morris Howard* for the appellees

STOCKBRIDGE, J., delivered the opinion of the Court.

The question presented by the record in this case is the right of the appellees to the specific performance of an agreement for renewal, contained in a lease from the predecessor in title of the present appellant, to the appellees, eleven in

number. The paper out of which the controversy arises is as follows:

"Baltimore, Md., April 30th, 1908.

"This Lease, Made this 30th day of April, one thousand nine hundred and eight, by Louis Sinsheimer, of Baltimore City, as party of the first part, and Ernest Kaiser, Henry Harman, William Kerner, Louis Hugel, Henry Hugel, Thomas Little, William Hugel, John Walz, John Eigner and William Pfaffenberger, trading as the Prospect Point Fishing Club, as parties of the second part.

"Now, whereas, in consideration of the payment of the annual rent of fifty dollars payable by the parties of the second part to Louis Sinsheimer, quarterly in advance, beginning on the first day of May, 1908, the said Louis Sinsheimer does hereby lease for a period of five years renewable for an additional period of twenty years at Sixty Dollars per year, unto the said Ernest Kaiser, Henry Harman, William Kerner, Louis Hugul, Henry Hugul, Thomas Little, Wm. Hugel, John Walze, John Eigner and Wm. Pfaffenberger, trading as Prospect Point Fishing Club, all that tract or parcel of land lying in Baltimore County, and described as follows:

"Viz: Beginning for the same at a stone placed at a pine tree at a head of a small cove emptying into Dark Head and running northeasterly alongside said cove ninety feet to a pine tree marked "S. E."; thence southeasterly along said cove one hundred and thirty-six feet to a stone alongside of a tree on the bank of Dark Head; thence running southwesterly along Dark Head two hundred and eighty feet to a stake in the bank on said Dark Head; thence running westerly two hundred feet to a stone; thence northeasterly by a straight line to the place of beginning.

"Being the same piece or parcel of ground which by lease dated the 30th day of April, 1903, was leased by the parties of the second part, viz: Ernest Kaiser, Henry Harman, Wm. Kerner, Jouis Hugel, Henry

Hugel, Thomas Little, Wm. Hugel, John Walz, John Eigner and Wm. Pfaffenberger, trading as the Prospect Point Fishing Club.

"The parties of the second part do further agree that they will not conduct upon said premises any saloon, hotel or bawdy house, and will not interfere with other tenants on said premises.

"It is also further agreed that if the said rent shall be in arrears thirty days, then the said Louis Sinsheimer shall have the right to distrain for the same.

"It is also further agreed that the said parties of the second part shall not assign this lease without the written consent of said Louis Sinsheimer, nor sublet a portion of said ground leased.

"It is further agreed that the improvements placed by the parties of the second part shall be removable by them at the expiration of their term.

"Witness our hands and seals this thirtieth day of April, one thousand nine hundred and eight.

"Jno. E. Eigner.

> "Louis Sinsheimer,
> "Wm. Pfaffenberger,
> "Ernest Kaiser,
> "Geo. W. Kerner,
> "Henry Harman,
> "Louis Hugel,
> "Henry Hugel,
> "William Hugel,
> "John Walz, Jr.,
> "Thomas M. Little."

The appellees had originally entered upon the property referred to in the lease in April, 1903, five years before the signing the paper just quoted. Sinsheimer, who is named as lessor in the paper, in April, 1909, conveyed a tract of fifty-three acres, including that leased to and occupied by the appellees, to the present appellant. The lease was, therefore, in force and the appellees in occupancy of the property at the time of the transfer from Sinsheimer to King.

The five-year period named in the lease having expired, the appellees filed a bill to require King to carry out the agreement embodied in the following language contained in the lease: "The said Louis Sinsheimer does hereby lease for a period of five years renewable for an additional period of twenty years at sixty dollars per year * * * all that tract or parcel of land, etc." Mr. King seeks to avoid the execution of a renewal lease for a period of twenty years, and various grounds are set up to sustain his contention.

To maintain a bill for specific performance it is requisite, and conceded, that the agreement which the Court is asked to require to be performed must be fair, just, reasonable, *bona fide,* certain in all its parts, and made upon a good and valuable consideration. *Griffith* v. *Frederick Co. Bank,* 6 G. & J. 424, and numerous cases since. While a decree for specific performance is never *ex debito justitiæ,* the rules controlling a court of equity, where this nature of relief is asked, have been so often and so clearly stated that it is unnecessary now to repeat them.

The first contention on behalf of the appellant is that the agreement is too uncertain in its character to admit of a decree for specific performance. Several grounds are urged as to the supposed indefiniteness of the agreement; thus, the fact that the property is in the State of Maryland nowhere appears in the agreement is given as a basis for the supposed indefiniteness, and the case of *Ellis* v. *Park,* 8 Tex. 205, is relied on to support the proposition, a decision which the editor of *Cyc.,* in a note on page 859 of Volume 16, characterizes as "anomalous." The general rule in that respect is stated in *Cyc.,* Volume 16, pages 858 and 859, as follows: "Courts have judicial notice of the prominent geographical features of the territory over which or State in which they exercise jurisdiction. * * * Courts sitting in a particular State of Territoy have judicial knowledge of the geographical position of its political divisions, such as counties, cities and villages." This rule was expressly adopted in this State

in *Acton* v. *State,* 80 Md. 551, and numerous cases might be cited from nearly every State in the country. For example, in *Higgins* v. *Bullock,* 66 Ill. 37, and *Bailey* v. *Birkhofer,* 123 Iowa, 59, it was held that the names of the counties of a State are a matter of judicial knowledge. In this respect, therefore, the contention of Mr. King can not be sustained.

Objection is also made to the description as contained in the lease. While it may well be that the description could have been more precise, it can not be assumed, as the appellant does, that a surveyor could not go upon the ground and identify and mark it out definitely. Certain distinct landmarks are called for, and if any one of them should not be found it would be a comparatively easy matter to reverse the call from another, and so fully locate the premises. The case largely relied on in this contention is the case of *Gorter* v. *Gale,* 86 Md. 687, in which this Court held an agreement too indefinite for enforcement which described the land simply as 13,650 acres more or less in Rockingham County, Virginia. There was no further description attempted to be given in that case, either by reference to the title, by a specification of metes and bounds, or as adjoining or bounding upon other tracts or lots. The case was, therefore, widely different from that now presented.

In the case of *Duvall* v. *Myers,* 2 Md. Ch. 401, which was a bill filed alleging a contract with regard to the cutting of wood, the paper set up as the contract was not signed by one of the parties, and the signature of the other was disputed, and the case did not present one in which there was any contract or agreement shown. In *Geiger* v. *Green,* 4 Gill, 472, there was no contract, merely a license for the digging of ore, and it was, therefore, properly held not to present a case for the specific performance of a contract.

In *Gelston* v. *Sigmund,* 27 Md. 334, where there was a rental by written memorandum for one year, under which the tenant had occupied the property for ten years, upon a

verbal understanding that Gelston would from time to time renew the lease upon Sigmund's paying the same rent as could be obtained from other parties, our predecessors refused to decree specific performance upon the ground of indefiniteness, no certain amount of rent being alleged or shown, and no obligation upon Sigmund to remain in the property or to pay any definite rent. In the present lease there was a definite term, five years, provided for; the rent a certain sum, fifty dollars, during that period, and then an agreement, which is the basis of this action, which provided for a renewal for a period of twenty years at an increased rental, namely, $60 per annum. The decree can not, therefore, under recognized equity rules, be refused upon the ground of the uncertainty of the contract.

The argument further is, that the appellees were not entitled to the relief which they sought by their bill, because of a lack of mutuality in the contract. Just what is meant by the term "mutuality" in a case of this character is nowhere better expressed than in *Spear* v. *Orendorf,* 26 Md. 37, where BOWIE, C. J., said: "Mutuality of a contract means an obligation on each to do or permit to be done something in consideration of the act or promise of the other. It does not imply that every stipulation is absolute and unqualified. The landlord according to the theory of this bill, in consideration of the agreement of the tenant to pay the additional rent, agreed to give him a lease for one year, with the privilege of extending the term to two or three years. If the landlord had executed the lease, the tenant would have been bound to pay the rent; on the other hand, if the tenant paid the rent 'on the foot' of the agreement, the landlord was bound to execute the lease according to the terms." Without multiplying authorities, it is thus clear that there is no such lack of mutuality in the present case as to prevent the appellees from being entitled to the relief which they seek.

It has been strongly urged upon the Court, that the original lease having been for five years, with an agreement of

renewal for twenty years, operates as an extension of the original term to a term of twenty-five years, and that, therefore, since the lease was not sealed, witnessed or acknowledged, that it did not comply with section 1 of Article 21 of the Code. There can be no question that the paper called a lease was not executed in the form prescribed by statute to be valid, as a conveyance or transfer of an interest in land, for any period above seven years. The question in this case is, whether the provision mentioned in the agreement is to be regarded as an extension of the term, or an option for another term, or an agreement to lease at a subsequent time for a twenty-year term. The cases construing the proper meaning to be ascribed to the term "renewal" or "renewable" are by no means uniform. Something of a collection of them will be found in 7th *Words and Phrases,* page 6086, and 4th *Words and Phrases,* 2nd Series, pages 268 and 269. A careful examination of the cases there cited tends to the conclusion that the construction to be given to the words "renewal" and "renewable" is controlled by the intention of the parties at the time when the paper is executed. Under the facts of this case, where the term, under the "renewal," was to be different from that provided in the original lease and attended by different legal consequences, and at a different rent, it would seem clear that what was contemplated was not an extension of the lease of 1908, but the giving of a new lease. See *Kollock* v. *Scribner,* 98 Wis. 104. In *Sponhaur* v. *Malloy,* 21 Ind. Apps. 287, it was said, that a renewal was the substitution of a new right or obligation for another of the same nature, that it is a change of something old for something new. To support the appellant's contention, the case of *Toupin* v. *Peabody,* 162 Mass. 473, was strongly relied on. In that case the lessor prior to the termination of the lease had transferred his interest in the property, and the right given to the lessee was a privilege to renew at the expiration of the lease for a further term of five years, *upon the same terms.* This is, therefore, readily distinguishable from the present case in two particulars, (1) The term for

the renewal was not the same either in duration or amount of rent, as the former lease; and (2) in that case the assignee of the lessor took the property without any notice of the existence of the lease, while in the case before us Mr. King not only had such constructive notice as might result from the lease of 1908 being recorded, and from the fact that it was recited in the conveyance to him that the grant was made subject to certain outstanding leases, but he also had actual notice both from the fact that the appellees were in possession, and from the fact that at the time when the conveyance was made to him by Sinsheimer the leases were exhibited, if not actually delivered to him. The fact that in his opinion the leases were not good leases, or that he had been advised that they were not valid leases, can make no difference.

Some reliance also appears to have been placed upon the decision of this Court in *Stewart* v. *Gorter,* 70 Md. 242; but a reading of that opinion can not fail to disclose the fact that what had been attempted in that case was a deliberate evasion of the Acts of 1884, Chapter 485, and 1888, Chapter 395, intended to put an end to the creation of irredeemable leases. Thus that case is wholly inapplicable to a case like the present.

If the provisions contained in this lease be regarded merely in the light of an option, it is none the less enforceable. See *Brantly on Contracts* (2nd Ed.), sec. 146 and page 333; *Smith* v. *Bangham,* 28 L. R. A (N. S.) 523 and note; *Thistle Mills* v. *Bone,* 92 Md. 47, and *Thomas* v. *G. B. S. Brewing Co.,* 102 Md. 417. And the fact that the relief is sought against a grantee of Sinsheimer instead of Sinsheimer himself can make no difference. *Worthington* v. *Lee,* 61 Md. 535; *Englar* v. *Garrett,* 100 Md. 387.

The evidence shows without contradiction that the increased amount of the rent was duly tendered to Mr. King when it fell due in 1913, and again tendered to him six months later, upon both of which occasions it was refused, and there is nothing in the record upon which an argument can be fairly based of laches upon the part of the appellees such as to disentitle them from the relief sought. See *Banks* v. *Haskie,* 45 Md. 207; *Neal* v. *Jefferson,* 212 Mass. 517,

and extended note upon the subject in S. C. 41 L. R. A. (N. S.) 387.

The decree appealed from will, therefore, be affirmed, except in one particular. By that decree it was provided: "And it is further adjudged, ordered and decreed that the said lease shall be executed in duplicate and that one of said duplicates shall be delivered to the lessor and lessees, respectively, upon the payment by the lessees to the lessor of all arrears of rent from May 1st, 1913, to the date of said delivery." There was no provision in the original agreement for any execution in duplicate; a lease for twenty years to be valid must, under section 1 of Article 21, be executed with certain formalities, and duly recorded, and that is all that the appellees in this case had the right to demand. This clause of the decree should, therefore, be modified by striking out the requirement of its execution in duplicate, and the delivery of a duplicate copy to each of the parties hereto.

There was one argument which was strenuously pressed as a reason for the refusal to award a decree for specific performance, namely, that under a lease for twenty years the appellees would by virtue of the Act of 1900, be entitled at any time after the expiration of five years, to redeem the property by the payment of the value of the rent, capitalized on a basis of 6%. This argument, however, is without force. The Act of 1900 was in full operation and had been for a number of years at the time when the agreement now involved was made, and it must be presumed that the agreement was made in full contemplation of this Act. Moreover, the increased amount of rental to be paid may well have been fixed because of the fact that the lessee under a lease for twenty years would be entitled to such right.

For the reasons given the decree of the Circuit Court of Baltimore City will be affirmed in part and reversed in part, and the case remanded in order that a decree may be entered in accordance with this opinion, costs to be paid by the appellant.

> *Affirmed in part and reversed in part, and cause remanded; costs to be paid by the appellant.*