# CIRCUIT COURT OF BALTIMORE CITY.

Filed October 25, 1923.

FRANK E. BUCK
VS.
LOUIS HURWITZ AND BENJAMIN PUGATCH.

*Baldwin & Sappington* and *Jacob S. New* for plaintiff.

*Enos S. Stockbridge* and *Simon E. Sobeloff* for defendants.

term.

FRANK, J.—

Prior to the hearing in this case, all of the acts to prevent the doing of which a prohibitory injunction was prayed, were fully done and performed by the defendants. The only relief which this Court can now effectively give, if any relief can be given, is to issue mandatory injunction as prayed in paragraph (c) of the prayer for relief. The case was heard on bill, answer and testimony taken in open Court.

The decisive facts are few and substantially undisputed. The plaintiff has occupied the premises numbers 102 and 104 Clay Street as a Lady's Boot and Shoe Shop since 1915. The building is a flat iron one in shape and the point thereof approaches to within about 10 feet of Liberty street, but the building has no frontage on Liberty street. It cannot be seen from Lexington street and not from Liberty street until the observer is almost at the corner of Clay street. There extended along Clay street from the easternmost end of 102 and 104 Clay street to the building line of Liberty street, a blank wall, which is part of the south wall of the property No. 218 North Liberty street. Upon this wall plaintiff had maintained signs advertising his business during the whole term of his occupancy and a portion of these signs could be seen from the south from below Lexington street, and most of the signs and finally all of them could be seen on Liberty street as one approached Clay street from the direction of Lexington street. The plaintiff expended large sums of money in advertising his business using reproductions of these signs in his advertisements.

The plaintiff became the tenant of the Clay street property by virtue of a lease to him from one Wilson who at that time owned not only the Clay street property, but also No. 218 North Liberty street. Plaintiff remained in possession under a series of leases from Wilson the last of which that involved in this litigation, was dated December 11th, 1918, was for the term of five years, "with the privilege of renewal for the term of five years at the same yearly rental of $1,200, beginning on the first day of January, 1919, and ending on the thirty-first day of December, 1923." One provision of this lease read: "The landlord further agrees that the tenant shall have the right to place signs on the south wall of No. 218 North Liberty street provided they do not interfere with those already there." This lease, although not acknowledged, has actually been recorded among the Land Records of Baltimore City. Subsequently, the defendant, Hurwitz, purchased the property No. 218 North Liberty street. Moreover, it is conceded that Hurwitz did not have actual notice of the lease at the time that he acquired the Liberty street property, but that he was acquainted with the actual contents thereof for two and a half years before the present controversy arose.

Just prior to the institution of this suit, the defendant, Pugatch, under the direction of Hurwitz, made an opening in the wall in controversy destroying certain of the signs and at the time of the hearing all of plaintiff's signs had been completely obliterated.

The authorities bearing upon the questions here involved are rather meager and such as can be found cannot be completely reconciled. I have, however, reached the conclusion that the right to use the walls of another's property for advertising purposes constitutes an easement and not a mere license, where that right as here is acquired for a valuable consideration. Where, as here, the easement is acquired in connection with, and as an incident to, the conveyance of an estate in other land, it should be held to be appurtenant to such other land rather than in gross.

1 Tiffany, Real Property, Sec. 305, p. 686. 19 C. J. p. 868.

Two questions remain to be considered:

1. Was the easement to maintain the signs involved here validly created by the lease of December 11, 1918?

2. Did Hurwitz have notice of the existence of the easement sufficient to bind him?

First: As already stated the lease for a term of five years, renewable for a further term of five years, though not acknowledged, was recorded among the Land Records of Baltimore City. Not being a paper entitled to be recorded, the record did not operate as constructive notice.

Harbor Co. vs. Smith, 85 Md. at p. 543.

This was conceded at the hearing.

While an easement is usually perpetual in duration, and is spoken of as an incorporeal herditament, there is no sound reason why an easement may not be created for a term of years. Where the easement is freehold or for a greater term than seven years, being an interest in land, the instrument creating it must, as required by Section 1 of Article 21 of the Code, be executed, acknowledged and recorded.

Dawson vs. Western Md. Ry. Co., 107 Md. 70, 93.

Where a term of less than seven years is created by a lease, an easement appurtenant to property leased can certainly be created for the term of the lease. No authority would appear to be needed for this proposition. It is self-evident, and this fact possibly accounts for the scarcity of authority sustaining it. Still there is authority for it.

Goddard on Easements, p. 519.

See also cases of decisions in favor of bill posting companies holding that an easement in gross has been created, e. g.

Borough Bill Posting Co. vs. Levy, 114 App. Div. 784.

Willoughby vs. Lawrence, 116 Ill. 11.

The next inquiry, then, is was this lease for five years with the privilege of renewal for five years more on the same terms and conditions validly executed? If equivalent to a lease for a term of ten years, it should have been acknowledged. If it be a lease for five years only and the renewal constitutes in effect a new lease for five years more, then it was properly executed without acknowledgment. Both sides cite King vs. Kaiser, 126 Md. 213, as sustaining their respective contentions. In that case the lease was for five years with the privilege of an additional twenty years at an increased rent, and the Court held that the additional term being for a different period than the original term, and upon a different rental, could not be regarded as an extension thereof, but was a new term and that the lease did not require acknowledgment and recordation for its validity.

In the case at bar, the original term of five years had not expired at the time of the commission by the defendants of the alleged wrongful acts and has not yet come to an end. The privilege of renewal has not yet been exercised and may never be exercised. The question of whether the privilege, if exercised, will provide for a new term to be created by a new lease, or will operate merely as an extension of the original term is a difficult one depending for its solution upon the intention of the parties at the time of the execution of the lease.

King vs. Kaiser, supra, at page 220.

If the former be held to have been their intention, then the lease here involved was validly executed and needed no acknowledgment or recordation

even as against third parties. If, however, the intention was that the original term should be extended at the option of the lessee, then the privilege does not constitute a covenant to renew, but a present demise which becomes operative immediately upon the exercise of the option. The holding then is under the original grant and not under the election.

24 Cyc. 1008 (II).

In the latter case, the lease to be valid as against third parties should have been acknowledged and recorded.

King vs. Kaiser, supra, page 220.

No testimony appears in the record that throws any light on this question of the intention of the parties to the lease. In addition to the privilege already quoted the lease provides: "That this agreement with all its provisions and covenants shall continue in force from term to term after the expiration of the term above mentioned provided however, that the parties hereto or either of them can terminate the same at the end of the term above mentioned or any term thereafter by giving at least sixty days previous notice thereof in writing." It appears, therefore, that by this provision the term of the agreement would be automatically extended unless the notice to terminate should be given.

From this language it appears that the parties knew how to use apt language to accomplish the extension of the term of the lease—"shall continue in force, etc." As contrasted therewith, the words, "privilege of renewal" would indicate an intention to require a *renewal*, the making of a new lease and not the mere extension of the term of the old one upon the exercise by the tenant of his option to renew. I conclude, therefore, that taking into consideration all of the provisions of the lease, the parties intended, in the language of King' vs. Kaiser, supra, page 220 "an option for another term, or an agreement to lease at a subsequent time" and not "an extension of the term." This view is borne out by the decisions in.

Kollock vs. Scribner, 98 Wis. 104, cited in King vs. Kaiser, supra.

James vs. Kibler, 94 Va. 165.

The lease in this case being thus for a term of five years only did not require acknowledgment or recordation and is valid even as against third parties. The conclusion thus reached renders it unnecessary to consider the effect of the notice to the defendant, Hurwitz, of the plaintiff's rights growing out of the open notorious and continuous use of the wall in question by the plaintiff for the display of his signs.

. King vs. Kaiser, supra, at page 221.

I shall sign a decree directing the mandatory injunction to issue as prayed against the defendant, Hurwitz.