# CIRCUIT COURT OF BALTIMORE CITY.

Filed April 5, 1924.

JACOB EPSTEIN, FREDERICK H. GOTTLIEB AND WILLIAM C. NOLTING, TRUSTEES OF THE POOLED STOCK OF THE MERCHANTS' HOTEL COMPANY, A BODY CORPORATE, PLAINTIFFS,

VS.

ISRAEL SILBERSTEIN, DEFENDANT.

*Knapp, Ulman & Tucker* for plaintiffs.

*Sykes, Nyburg & Walter* for defendant.

STEIN, J.—

This is "a special case stated" under the 45th General Equity Rule having for its object the determination first by this Court, then by the Court of Appeals, of the question "whether or not the lease hereinafter named is a lease for more than fifteen years" the rent in which is now redeemable under Section 93 of Article 21, page 521; first volume of Bagby's Code. This question arises not between the landlord and tenant, but between vendors and vendee. The special case stated shows; that on January 10th, 1924, by a writing under their hands and seals the plaintiffs, trustees of the pooled stock of the Merchants' Hotel Company, agreed to sell to the defendant, who agreed to buy from them, for a certain sum, all the issued shares of the capital stock of the said Merchants' Hotel Company, a corporation; and that as "a condition precedent to the execution of that contract," the vendors therein warranted among other things, that the title of the Hotel Company, the landlord, to the land and building known as the New Howard House in Baltimore City, is good, merchantable and unencumbered, except for a mortgage thereon, the balance due on which on February 1st, 1924, amounted to $65,000; and that said hotel land and building are subject on February 1st, 1924, to a subsisting lease expiring not later than February 28th, 1926; and that upon the vendor's breach of any warranty in the contract of sale, the vendee may cancel the contract, and receive the return, with interest, if any, of his deposit of $12,565. This special case stated, also shows that on April 24th, 1906, the said Merchants' Hotel Company leased to the New Howard Hotel Company, each a body corporate, the hotel property in this city at the southwest corner of Howard and Garrett streets, fronting 51 feet 10 inches on Howard street by an even depth of that width on Garrett street of 148 feet ½ inch; at which time the hotel property was subject to two mortgages, one a first mortgage of $125,000, and the other a second mortgage of $5,000; that the term of said lease began on April 24th, 1906, and ended on February 28th, 1916; in which lease there was received a different yearly rental for each year, ranging from $16,342 for the

first year; increasing by $500 each other year, so that at the tenth year the yearly rent was $20,842; each of said rents, were payable, at the end of each calendar month of said term; that said lease contained a clause, that the lessee "is to have the privilege of renewing said lease at the expiration of said term for another term of ten years at the rent of $21,842 for said renewal term; provided written notice of said proposed renewal is given to lessors, its successors or assigns at six months prior to February 28th, 1916." The lease also contained covenants prohibiting the "lessee from assigning or sub-letting this lease, or any part thereof, without the written consent of the lessor or its assigns, which covenants were not to exclude the lessee from sub-letting the barber shop, the billiard room, the news and cigar stand, or bar, from the usual privileges of similar character connected with the operation of the hotel and restaurant business." It also contained a clause, "that in the event it became necessary to build a fire escape, the lessor should do so at once under the supervision of the lessee, which was to pay an increased annual rental of ten per cent. of the cost, the necessity of the fire escape to be determined by the public officials." It also contained the covenant of the landlord with the lessee to pay the principal and the interest of the two mortgages, as and when they were due, to secure a renewal or extension thereof, and to produce satisfactory evidence to the lessee of such payments or extensions, and in the event of any default in such payments, the lessee was to have the right to pay such payments out of the rental then due or to become due, the lessee to have interest on any payments so advanced. By another agreement between the same parties dated July 26th, 1906, each yearly rent reserved in that lease was reduced by the sum of $171, the lease in all other respects was ratified and confirmed.

On June 6th, 1915, and on August 8th, 1915, the lessee gave notice of its intent to exercise any and all rights of renewal or extension of said lease; on March 21st, 1916, and not until after the term created by the above named lease had expired, the Merchants' Hotel Company, and the New Howard Hotel Company, made a new lease of the above premises, in which they recited the lease of April 24th, 1906; the privilege of renewing that lease on the expiration of its term for another term of ten years; the notices above named, and the desire of the lessee to renew said lease in accordance with said provision; and that said "lessor does now in compliance with said demand for renewal of said lease, execute these presents and does lease to the above named lessee the above described lot of ground for a term of ten years beginning on the 29th day of February, 1916, and ending on the 28th day of February, 1926;" which lease also contains the covenant in the lease of 1906 for the payment of the rent; the covenant against assigning or subletting, the covenant to build fire escapes by the lessor, by the lessee to pay the increased annual rental of ten per cent. of the cost; the covenant between the lessor and lessee under which the lessor agrees to pay promptly the principal and interest of the first mortgage originally made for $125,000, in the event of the failure of the lessor to make such payments giving the lessee the right to pay the amount of the rental then due or to become due. This lease contains other covenants not necessary to set out herein.

The above, however, are substantially all of the important covenants.

Israel Silberstein, the vendee in the contract of sale, and the defendant in the special case stated, while desirous of carrying out the contract is not willing to do so if the above lessee has the right to redeem the rent in the lease of 1916.

Chapter 485 of the Acts of 1884, was the first legislation giving the tenant the right to redeem rent reserved in a lease for longer than fifteen years. That Act was passed to break up the ground rent system peculiar to, and so largely prevalent in this city, that in obedience with which public demand, the Act above named was passed; which thereafter was followed by the Acts of 1888, Chapter 395; and that of 1900, Chapter 207, in interpreting, which the Court of Appeals said, in Stewart vs. Gorter, 70 Md. 242, page 245, that "the Act of 1888 was the result of a well founded belief that the long leases with their covenant of renewal were injurious to the welfare

of the City of Baltimore, and that sound public policy demanded that all leases made for more than fifteen years might be ended by the option of the tenant or lessee. * * * It was the system of these long leases irredeemable until the end of the term that the Legislature wished to break up." These Acts were changed first by the Acts of 1914, Chapter 371; and thereafter by the Act of 1922, Chapter 384; the first of which Acts, stated that the above named Acts were not intended and did not apply to leases or sub-leases of property leased for building purposes where the term did not exceed twenty-five years. The Act of 1922, Chapter 384, further cut down the scope of the redemption acts by stating that they were not intended to and did not apply to leases or sub-leases of property leases for business, commercial, mercantile or industrial purposes as distinguished from residential purposes where the term of such leases or sub-leases including the renewal did not exceed 99 years.

The Court of Appeals have construed the redemption acts above named in a number of the cases; the first that of Stewart vs. Gorter, above named, and the last that of Sweeney vs. The Hagerstown Trust Company, decided January 30th, 1924, reported in The Daily Record of February 25th, 1924. Stewart vs. Gorter was a deliberate evasion of the first of these acts by a lease executed by an owner of vacant land, to a lessee, a bonus builder, the term in which lease was 14 years, with a covenant to renew for another 14 years; which lease also contained the lessee's covenant that "he would not avail himself of any right, he might have by virtue of any Maryland statute to redeem the rent at a less sum than that of $2,400 fixed in the lease." The Court of Appeals very properly decided that this lease was in effect a lease for a longer period than fifteen years, and the rent therein named redeemable.

In Swan vs. Kemp, 97 Md. 686, the lease was a 99-year lease of a lot, improved by a building; the attempt was made to show that a lease of an improved lot was not within the letter of the spirit of the Acts, i. e., that the Acts were only intended to refer to leases of vacant land, which contention was held unsound; if the Court of Appeals had not so held, the bonus builder could have evaded the law by not making a lease until after the lots had been improved.

In King vs. Kaiser, 126 Md. 213, page 215, 222, the lease was for five years, renewable for an additional period of twenty years at a slightly increased rent. When the bill was filed the five-year term had expired and the object of the proceeding was to enforce the execution of the renewal lease for the 20-year period. The Court of Appeals held, as it must have, that the rent in the 20-year lease was redeemable at six per cent, at any time after five years from the expiration of its date, and that the "increased rent might well have been paid because of the fact that the lessee in the 20-year lease would be entitled to redeem."

In Brager vs. Bingham, 127 Md. 148, 157, at the time of the filing of the bill, there were in force two leases; one the term of which would expire on December 4th, 1915; the other dated March 16th, 1916, the term of which began December 4th, 1915, ran for twenty years, until December 3rd, 1935. In that case the Court again held that the rent reserved in the 20-year lease was redeemable at the end of five years from its date.

These cases held that the above Acts refer to the ordinary leases whether made for vacant or improved land, when the term of the lease in question is for more than fifteen years.

In Buckler vs. Safe Deposit Company, 115 Md. 222, the Court of Appeals held that the 999-year lease of the properties and franchises of the Northern Central Railroad to the Pennsylvania Railroad was not within the meaning of the above named redemption acts.

In Walker vs. Washington Grove, 127 Md. 564, the Court of Appeals held that the lease therein named, for 99 years renewable forever, of a lot formerly a campmeeting site, was not within these redemption acts, because the rent therein reserved was not a fixed sum, but was such a sum not to exceed six per cent. annually on the shares of stock, as the association would assess each year; the lessee waiving any dividends upon said stock, and because the rental so reserved was of such a fluctuating character, that there was not such a defi-

nite rent as the statute contemplated, the Court saying:

"We have no fear of the suggested injurious effect on the subject of the redemption of leases by the conclusion we have reached; it is not at all probable that such a plan as this association adopted will be followed for the purpose of evading them."

So that the leases held by the Court of Appeals to be within the redemption acts were those leases creating the irredeemable rents inhibited by the public policy referred to in Stewart vs. Gorter, supra.

The facts in the special case stated show that the leases in question did not reserve a rent of the forbidden kind and so are not against public policy; and could not have been, as was the lease in that case, a deliberate evasion of the redemption acts. Nor is the lease now in existence a lease for more than fifteen years. That lease is for ten years; was not executed until the 21st day of March, 1916; and twenty-two days after the term created by the lease of April 24th, 1906, had expired; which term ended on February 28th, 1916. While it is true, that in the lease of 1916 the term related back to the 29th of February, 1916; yet even on that date, the term in the first lease had expired.

Brager vs. Bingham, 127 Md. supra, holds that the date of the last lease, and not the date of the beginning of the term, is the date from which the right of redemption is to be reckoned. In that case the rent was declared to be redeemable before the term began. The Court of Appeals handed down its decision on December 2nd, 1915, the term began on December 4th, 1915; Ibid, 127 Md. 148 at 152. But the last lease in the Brager case was a twenty-year lease; and in this case it is a ten-year lease.

The leases here, like that in the Walker case, supra, contain other clauses which show that they are not within the terms of the redemption statutes—the rents under the lease from 1906, fluctuating from $16,000 to $20,842: they contained a provision rendering the amount uncertain because of the clause increasing the annual rental ten per cent. of the cost of the fire escapes; and of the clause attempting to give the tenant the right to pay the principal and interest of the mortgages. The lease of 1916 contains an additional clause not in the first lease in which clause the lessees' right to make payments on account of the mortgage of the property is so enlarged as to take care of the maturity at the end of any renewal or extension, showing the parties thereto deliberately provided for conditions not provided for in the first lease.

The execution of a new lease, no matter for what reason, even if compliance of the provision of renewal in an earlier lease, ends the rights under the old lease not only because of differences such as those above set out but because:

"In point of legal operation each renewed lease is a new lease, and the taking of it operates as a surrender of the old one." 24 Cyc. Landlord and Tenant, page 1020.

In King vs. Kaiser, supra, the Court of Appeals held that in the five-year lease, the following words, "The said Louis Sinsheimer doth hereby lease for a period of five years renewable for an additional period of twenty years," did not contemplate the renewal or extension of the old lease; but contemplated the execution of a new lease, holding under the facts of that case, where the term of the renewal is different from that provided in the original lease, and is attended by different legal consequences and at a different rent, it would seem clear, that what was contemplated was not an extension of the lease of 1908, but the giving of a new lease." In this case the lease of April 24th, 1906, was a lease for *nine years ten months and four days;* the new lease is a lease for ten full years which shows a different term. The rents in the first lease increase by $500 a year; the highest rent in which was $1,000 per year less than the rent in the new lease, which shows a different rent; the new lease was not executed until twenty-two days after the first lease had ended, during which time the tenant did not hold under either the lease of 1906 or the lease of 1916. which shows a different date, so that the new lease differs from the first lease in rent, term and date.

For these reasons the answer to the question in the special case stated must be "no;" and a decree for specific performance follows.